SHEPHERD, Appellant,

v.

WESTLAKE, Appellee, et al.

[Cite as *Shepherd v. Westlake* (1991), 76 Ohio App.3d 3.]

Court of Appeals of Ohio,
Hamilton County.

No. C–900161.

Decided Aug. 28, 1991.

4

*Buechner, Haffer, O'Connell, Meyers & Healey Co., L.P.A.,* and *Roger W. Healey,* for appellant.

*Frost & Jacobs* and *Douglas E. Hart,* for appellee.

---

HILDEBRANDT, Judge.

Plaintiff-appellant, Glenn E. Shepherd II ("appellant"), appeals from the judgment entered by the Hamilton County Court of Common Pleas in favor of defendant-appellee, Robert G. Westlake ("appellee"), on counts two, three and four of appellant's amended complaint,[1] and on count four of appellee's second amended counterclaim.[2]  Appellant dismissed count one of his amended complaint prior to trial, and his remaining claims against a myriad of other defendants were dismissed by the trial court.

The record discloses that in 1976, appellee acquired two apartment complexes and adjacent land from the American Colony Company ("American Colony").[3]  Prior to this purchase, appellee had acted on behalf of American Colony to syndicate the apartment complexes, which were known as the "West Hills Apartments" and the "Arrowhead Apartments."  The syndication involved creating numerous partnerships composed of investors secured by appellee.  These limited partnerships were designated as "West Hills Apartments Limited" ("West Hills") and "Arrowhead Apartments Limited Phase I" ("Phase I").  During the proceedings below, appellant maintained that he had

---

1.  The only defendant that is the subject of the instant appeal is appellee Westlake.

2.  Appellee asserted five counterclaims, four of which were dismissed by appellee prior to trial.

3.  Appellant was employed by American Colony from 1967 to 1972.  He testified that he oversaw the construction of these apartment complexes for American Colony.

an oral agreement with appellee, pursuant to which the two were to own, on a fifty-fifty basis, the general partnership interest in West Hills and Phase I, as well as the land adjacent to Phase I.[4] Appellant further contended that the agreement called for an equal division of the rental management fees for both West Hills and Phase I. However, the written management contract for the properties is silent as to appellant.

Beginning in 1976, appellant and appellee created three additional ventures in which they were to be general partners in apartment complexes known as "Arrowhead Apartments Phase II Limited" ("Phase II"), "Arrowhead Apartments Phase III Limited" ("Phase III") and "Arrowhead Apartments Phase IV Limited" ("Phase IV"). While appellant initially claimed that he had a fifty-percent interest in these general partnerships, he subsequently testified that he owned a two-percent equity interest in comparison to appellee's three-percent interest in Phase II and that each held a 6.69–percent interest in Phase III and a five-percent equity interest in Phase IV.

In July 1979, a dispute arose between appellant and appellee concerning the progress of the construction of Phase IV. Appellee demanded that appellant, who was in charge of the construction, replace the construction supervisor. When appellant refused, appellee replaced the supervisor with another individual. Appellant's involvement in West Hills and Phases I, II, III and IV effectively ceased as of July 1979.

In November 1985, appellant tendered formal notice of his withdrawal as general partner in Phases II, III and IV.[5] This led to his demand that appellee pay him his equity interest in those ventures, and to his subsequent claim that appellee, in his capacity as managing general partner, had misappropriated partnership monies by paying himself excessive management fees.

The trial court's first task was to determine which of appellant's claims were to be tried by a jury. Among the group deemed eligible for resolution by the jury were the fraud and breach-of-contract claims concerning the alleged 1976 oral contract providing for the transfer of a fifty-percent interest in the real estate adjacent to Phase I, as well as the alleged promise to transfer a general-partnership interest in Phase I and West Hills; the claim for a fifty-percent interest in the management contract for Phase I and West Hills; and the claim for a fifty-percent interest in the management fees for Phases II, III and IV.

---

4. The land consisted of forty-four acres upon which appellee intended to create additional apartment units.

5. In May 1989, appellant tendered formal notice of his withdrawal from Phase I and West Hills.

Next, the trial court determined that the non-jury claims would be resolved at the conclusion of the jury trial. The second group included appellant's claims for guaranteed initial management fees for Phases II, III and IV, and for the determination of the fair value of appellant's equity interest as a general partner in Phases II, III and IV.

Appellee's counterclaim, alleging that appellant interfered with the contractual relations of appellee in the five limited partnerships, as well as appellee's demand for injunctive relief to enjoin appellant's alleged activities in seeking the defection of the limited partners in those concerns, was also to be determined by the court.

Prior to the commencement of the jury trial, the trial court invoked the statute of frauds to dismiss appellant's claim concerning the forty-four acres adjacent to Phase I. The trial court reserved its ruling on the question of whether the statute of frauds was a bar to appellant's claim for a fifty-percent interest in the operating management fees for Phases II, III and IV because the underlying contract could not be performed within one year. However, that claim was subsequently dismissed at the conclusion of appellant's case-in-chief. The court also dismissed appellant's fraud claims at the end of his case-in-chief for the reason that appellant had failed as a matter of law to present sufficient evidence of a material misrepresentation of fact.

The cause then proceeded into appellee's case against appellant's claims for his partnership interest in Phase I and West Hills, his fifty-percent share of the management fees for those properties, and his interest in the real estate. At the conclusion of all the evidence, the court overruled appellee's motion for a directed verdict and the jury began its deliberations. On May 16, 1989, the jury returned a general verdict in favor of appellant in the amount of $381,000.

Thereafter, on May 17, 1989, trial of the non-jury claims was held with respect to the following: guaranteed management fees for Phases II, III and IV; the fair value of appellant's equity interest as a general partner in those projects; appellee's interference claims; and appellee's demand for injunctive relief. At the conclusion of appellant's evidence, appellant agreed to dismiss all defendants except appellee, individually, the General Corporation for Housing Partnerships [6] and Phases II, III and IV.

Thereafter, the court heard arguments on appellee's motion for a dismissal, pursuant to Civ.R. 41. The trial court granted appellee's motion as to appellant's claim for his equity interest in Phases II, III and IV. The court

---

6. This corporation, of which appellee was the sole shareholder, was a special limited partner in Phases II, III and IV.

reasoned that because the partnership agreement provided that the remaining general partner could continue to operate the partnership property, appellant was not entitled to his equity interest in those ventures.

The court also dismissed appellant's claim for guaranteed management fees for the reason that the unpaid portion of those fees had been converted into a residual receipt obligation which was not payable until the dissolution of the partnerships. The record also reflects that on June 7, 1989, appellee filed a motion for judgment notwithstanding the verdict ("JNOV") or, alternatively, for a new trial. In support of the motion, appellee argued, *inter alia,* that R.C. 1335.05 barred those claims upon which the jury rendered judgment for appellant.[7]

On September 26, 1989, the court placed of record its decision granting appellee's motion for JNOV, reasoning that the statute of frauds barred appellant's claims because such claims were based upon an oral agreement that could not be performed within one year. The court further declined to decide appellee's alternative motion for a new trial in view of the dispositive effect given to the statute of frauds. On October 7, 1989, appellee moved the trial court to grant conditionally his motion for a new trial. On November 3, 1989, appellant moved the court to reconsider its decision granting appellee's motion for JNOV, reinstate the jury verdict or, in the alternative, grant a new trial.[8]

On December 18, 1989, the trial court journalized its decision. Initially, the court overruled appellant's motion to reconsider the granting of appellee's motion for JNOV because the court had reserved its ruling on the applicability of the statute of frauds prior to the jury trial. Therefore, after hearing the evidence at the trial, the court was entitled to make whatever determination concerning the applicability of the statute of frauds was supported by the evidence. Beyond this, the court conditionally granted appellee's motion for a new trial, holding that the issues were to be relitigated in the event that the entry of judgment notwithstanding the jury's verdict did not survive appellant review.

On February 15, 1990, the trial court placed of record its judgment entry in which it incorporated the various rulings described above, and granted injunctive relief to appellee. From that judgment, appellant brings this timely

---

7. As discussed above, the jury returned a verdict on appellant's claims for a fifty-percent share of the general partnership of West Hills and Phase I as well as a fifty-percent share of the management fees of those apartment complexes.

8. This motion was filed before the entry formally granting appellee's motion for JNOV was journalized. For that reason the court considered appellant's motion on its merits.

appeal in which he advances six assignments of error. For the reasons that follow, we find none of the assignments to have merit and affirm the trial court's judgment.

Because appellant's first and sixth assignments of error have related issues, we choose to discuss them collectively. In his first assignment of error, appellant maintains that the trial court erred in granting appellee's motion for JNOV and denying appellant's motion for reinstatement of the jury's verdict or for a new trial. In the sixth assignment of error, appellant contends that the trial court erred in determining that appellee was entitled to a conditional new trial.

R.C. 1335.05 provides in pertinent part:

"No action shall be brought whereby * * * to charge a person upon an agreement made * * * upon a contract or sale of lands, tenements, or hereditaments, or interest in or concerning them, or upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized. * * *."

As previously discussed, the jury reached a general verdict in the amount of $381,000 on appellant's claim that appellee orally promised him a fifty-percent interest in the general partnership for West Hills and Phase I, as well as a fifty-percent interest in the management contract for those apartment complexes. While appellant argued below, and he urges now, that there were written management contracts in existence at the time of the events *sub judice*, it is clear that the alleged promise by appellee concerning West Hills and Phase I, if made, was oral.

We hold that the trial court correctly ruled that such an oral promise is within R.C. 1335.05. The record supports our decision. First, appellant's own testimony establishes that the management of West Hills and Phase I was an ongoing proposition while appellant was associated with appellee in other ventures from 1976 to July 1989. Furthermore, appellant testified that appellee's alleged promise that appellant would receive a fifty-percent share of West Hills and Phase I occurred in 1984, two years before those complexes were purchased from American Colony.

In an effort to avoid the operation of R.C. 1335.05, appellant argues that appellee's promise was actually a promise to enter into a written agreement for appellant to share in the general partnership and management fees for West Hills and Phase I, and that, as such, this oral promise could be performed within one year. However, the theory that there can be an oral

contract to enter into a contract subject to the statute of frauds cannot be employed to defeat the operation of the statute. See *Pro Arts, Inc. v. K Mart Corp.* (N.D.Ohio 1984), 580 F.Supp. 1073, 1075.

The standard of review for a motion for judgment notwithstanding the verdict is the same standard used to review a directed verdict under Civ.R. 50. The trial and appellate courts, without weighing the evidence, must construe the evidence most strongly in favor of the non-moving party and determine whether reasonable minds could only conclude in favor of the movant. If the evidence admits of only one conclusion: a motion for JNOV is appropriately granted. *Posin v. A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St.2d 271, 74 O.O.2d 427, 344 N.E.2d 334; *Wiebold Studio, Inc. v. Old World Restorations, Inc.* (1985), 19 Ohio App.3d 246, 19 OBR 398, 484 N.E.2d 280.

Appellant argues that the trial court improperly weighed the evidence in arriving at a decision to grant appellee's motion for JNOV. In support of this contention, appellant cites to the court's decision of September 26, 1989, in which the court reasoned that appellant "failed to prove by a preponderance of the evidence that there was in fact a written contract for management fees for either project."

Contrary to appellant's argument that the trial court improperly weighed the evidence in ruling upon appellee's motion for JNOV, there was no evidence of a written agreement that concerned appellant's alleged share of the management fees and, consequently, the trial court did not err in granting the motion. Having so ruled, we hold that appellant's sixth assignment of error, concerning the trial court's granting of a conditional new trial to appellee, is subsumed in our disposition of the first assignment of error. Accordingly, appellant's first and sixth assignment of errors are overruled.

For his second assignment of error, appellant claims that the trial court erred by directing a verdict in favor of appellee on appellant's claim for management fees arising from Phases II, III and IV. We do not agree.

The record discloses that at the close of appellant's evidence on the jury issues, the trial court dismissed appellant's claims for rental management fees for Phases II, III and IV, finding that, even if appellee had orally promised to contract with appellant, the statute of frauds barred enforcement of that agreement because it could not be performed within one year. As we observed in ruling on appellant's first assignment of error, R.C. 1335.05 currently bars such an oral contract. Further, even if the alleged promises by appellee could be considered as an oral promise to enter into the written contract to share the rental management fees, such an oral promise cannot be used to defeat the operation of the statute. *Pro Arts, Inc. v. K Mart, supra.*

Therefore, it is clear that even with the evidence construed most strongly in appellant's favor, reasonable minds could only conclude in favor of appellee. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 21 O.O.3d 177, 423 N.E.2d 467; *Humphrey v. Dent* (1980), 62 Ohio St.2d 273, 16 O.O.3d 321, 405 N.E.2d 284. Consequently, the trial court did not err in granting appellee's motion for a directed verdict and the second assignment of error is overruled.

■ Appellant's third assignment of error challenges the trial court's dismissal of his claim for a fifty-percent interest in the forty-four acres adjacent to Phase I. Appellant's position in support of this assignment is untenable.

As noted above, R.C. 1335.05 requires that a contract for the sale of land be in writing. Because this transfer of land was based on an alleged oral agreement, we hold that the trial court did not err in dismissing this claim on a directed verdict for appellee. The third assignment of error is overruled.

■ Under his fourth assignment of error, appellant contends that the trial court erred when it ruled that certain guaranteed management fees, the amounts of which were set forth in an offering circular for Phases II, III and IV, prepared by appellee, were not guarantees of absolute amounts. This assignment is without merit.

As noted above, the trial court sat as the trier of fact on certain claims, including the one involved in this assigned error. During the trial, appellant testified that he was a general partner in Phases II, III and IV. Appellant identified the individual amended partnership agreements for those limited partnerships. Each of those agreements called for the general partners to receive guaranteed management fees for the three apartment complexes. The amount of the fees, however, was not specified within the amended partnership agreements.

Appellant next identified Plaintiff's Exhibits 2, 3 and 15, the offering circulars for Phases II, III and IV, respectively. These offering circulars called for the general partners and the special limited partner to receive a guaranteed management fee. For Phase II, the general partners and the special limited partner were to receive $175,000 as partial payment of the guaranteed initial management fees for the first three years of the partnership's existence. However, that document further provided:

"Of the total amount of funds paid into the Partnership or to any partner therein in the calendar years of 1976, 1977 and 1978, the sum of Two hundred fifteen thousand six hundred seventy ($215,670) dollars shall be placed in an Escrow Account with a Mortgagee. The Mortgagee shall have authority to pay over such funds to or on behalf of the Partnership during construction to

complete the project. The balance of such funds after such disbursement, if any, shall be distributed to the General Partners. * * * "

Similarly, the Phase III offering circular states that $133,685 shall be retained by the general partners and the special limited partner as partial payment of certain contributions including guaranteed initial management fees, for the initial period of rent-up activity. Further, " * * * the General Partners shall use a portion of all such funds, together with the construction loan proceeds and funds derived from initial rental income, to build Phase III. * * * "

As to Phase IV, the offering circular calls for $220,000 to be returned to the general partners and the special limited partner as partial payment for certain efforts, including guaranteed initial management fees. Further, the circular requires that the general partners use a portion of these funds together with construction proceeds and initial rental income to build Phase IV.

It is undisputed that the amended partnership agreements for Phases II, III and IV are silent as to any specific amount of guaranteed initial management fees due the general partners. It was appellant's position during the proceedings below that the offering circulars, which did set forth specific amounts, were incorporated into the amended partnership agreements. During appellant's direct examination, appellee objected to references to the offering circulars for the reason that they were not contracts. The trial court reserved ruling on this issue and permitted appellant to proceed with his case-in-chief on the subject of the guaranteed initial management fees.

During direct examination, appellant explained that he received $20,032 in 1977 as guaranteed management fees. In 1976, appellant received $20,000 as management fees. However, he returned that amount to the partnership in order to fund the project. That contribution became a residual obligation of the partnership.

In 1977, appellant received $32,650 as a guaranteed initial management fee for Phase III. However, appellant contributed $14,393.53 in 1977 and $25,000 in 1978 to the guaranteed completion construction account. Appellant explained that in the event that the construction proceeds and the syndication dollars were inadequate to fund the projects, it was incumbent upon the general partners to contribute personal funds to the project. Those contributions were to become a residual obligation of the partnership and would be paid upon the sale of the completed venture.

After hearing the evidence concerning the shortfalls of the projects, the court inquired of appellant's counsel:

" * * * If, under your reasoning just now, the unpaid portion of those fees has been converted into a residual receipt obligation which is not payable until the dissolution of the partnership, what is the right to present entitlement?

"[Appellant's counsel]: Well, your Honor, as I understood this, this is an accounting, this claim is for an accounting."

The court went on to say that it had understood appellant's claim to be a demand for the guaranteed management fees, not a question of residual receipt obligations, as appellant argued in court.

From our review of the evidence, we are of the opinion that the trial court correctly dismissed the claim for guaranteed management fees for the reason that it was not ripe for litigation. As appellant acknowledged, the matter of the residual obligations of the three limited partnerships was an accounting question to be determined upon the dissolution of those ventures. The evidence presented below supports our conclusion because the shortfall of funds to complete the projects required use of the management fees. Accordingly, the trial court did not err by dismissing this claim. Appellant's fourth assignment of error is overruled.

For his fifth and final assignment of error, appellant maintains that the trial court erred by improperly applying the provisions of R.C. 1782.34. That statute, effective April 1, 1985, provides:

"Except as provided in this chapter, upon withdrawal, any withdrawing partner is entitled to receive any distribution to which he is entitled under the partnership agreement and, *if not otherwise provided in the agreement,* is entitled to receive, within a reasonable time after withdrawal, the fair value of his interest in the limited partnership as of the date of withdrawal based upon his right to share in distributions from the limited partnership." (Emphasis added.)

The record discloses that appellant's active participation in Phases II, III and IV terminated in July 1979. In three separate letters, each dated November 20, 1985, to the special limited partner, the General Corporation for Housing Partnerships,[9] appellant announced his intention to withdraw as a general partner from the respective limited partnerships. He also demanded the distribution of the fair value of his interests in each of the limited partnerships. Each of the limited-partnership agreements provided, *inter alia:*

---

**9.** Appellee was the sole shareholder of this corporation.

"24. RIGHT OF GENERAL PARTNER TO CONTINUE BUSINESS OF PARTNERSHIP:

"In the event of death, default, dissolution, withdrawal, retirement, assignment for the benefit of creditors, adjudication of bankruptcy, insanity or incompetency of a General Partner, the remaining or successor and/or any successor and/or substituted General Partner(s) or Partners may elect to continue the business of the Partnership for the balance of the term specified in Paragraph 5 hereof with all of the Partnership property as before. Such election shall be exercised by giving written notice thereof to the Limited Partners of the happening of such event. The Partnership shall be terminated and dissolved pursuant to Paragraph 27 hereof unless all the obligations of the General Partner hereunder or assumed by the successor General Partner within thirty (30) days after receipt of such event, consented to by sixty percent (60%) interest of the Limited Partners."

In count four of his amended complaint, appellant sought the distribution of the value of his interest in these limited partnerships. The trial court determined that the agreements provided for the non-withdrawing partner to continue the partnerships and granted appellee's Civ.R. 41 motion to dismiss. Appellant contends that this ruling was erroneous because appellee did not give notice of his intent to continue Phases II, III and IV. Indeed, the record is silent as to whether appellee gave such written notice or whether the continuation met with the approval of sixty percent of the limited partners. The record does contain evidence that appellee assumed appellant's role in the construction of the respective projects, including personal expenditures for construction costs, and there is no evidence that appellee did not have the authority from the limited partners to take such action or that he had not otherwise complied with paragraph 24 of the agreement.

In construing the evidence presented below in a light most favorable to appellant, we cannot say that the trial court erred in determining that reasonable minds could only conclude in appellee's favor. Appellant's fifth assignment of error is overruled.

Having passed upon all six of appellant's assignments of error and having found that all the assignments are without merit, we affirm the judgment of the court of common pleas.

*Judgment affirmed.*

SHANNON, P.J., and UTZ, J., concur.