ZBS INDUSTRIES, INC., Appellant,

v.

ANTHONY COCCA VIDEOLAND, INC., Appellee.

[Cite as *ZBS Industries, Inc. v. Anthony Cocca Videoland, Inc.* (1994), 93 Ohio App.3d 101.]

Court of Appeals of Ohio
Cuyahoga County.

No. 64520.

Decided Feb. 7, 1994.

102

*Jones, Day, Reavis & Pogue, Robert P. Ducatman* and *Randal S. Baringer,* for appellant.

*Michael J. Morley, Green, Haines, Sgambati, Murphy & Macala Co., L.P.A., Dennis Haines* and *Barry Laine,* for appellee.

---

PATTON, Presiding Judge.

Plaintiff-appellant ZBS Industries, Inc. ("ZBS") appeals from a jury verdict rendered in favor of defendant-appellee Anthony Cocca Videoland, Inc. ("Videoland") on a counterclaim alleging breach of contract and promissory estoppel.

On December 10, 1991, ZBS filed a complaint seeking recovery of $170,383.79, representing the amount owed by Videoland for the purchase of videotaped movies from ZBS. On January 29, 1992, Videoland filed an answer and a counterclaim, alleging breach of contract and promissory estoppel claims. In its counterclaim, Videoland maintained that ZBS breached a promise to extend a $150,000 line of credit for a period of two years.

At trial, Videoland admitted purchasing the movies from ZBS and the court directed a verdict in favor of ZBS in the amount of $170,383.79. The case then proceeded on Videoland's counterclaim.

The transcript of proceedings reflects that Videoland consists of ten video rental stores located in Youngstown, Ohio. ZBS is one of the major distributors of new videotape movies in the United States. From 1985 until the instant dispute arose, ZBS was the principal supplier of new movie titles to Videoland.

In June 1991, Videoland was offered an opportunity to sell used videotapes to Blockbuster Video, a national chain of video stores located throughout the United States. Blockbuster, through its broker, Unicorn, Inc., agreed to purchase one thousand forty-five-day-old movies per month from Videoland at a cost of $30 per movie. In order to facilitate the arrangement with Blockbuster, Videoland needed to obtain a $150,000 sixty-day line of credit with its supplier. Videoland contacted ZBS and Jay Schultz, Vice–President of ZBS, orally agreed to the credit terms. Videoland then entered into the agreement with Blockbuster, relying on the promise of ZBS to provide the necessary credit terms. It was conceded by the parties that neither the Videoland–ZBS nor Videoland–Blockbuster agreement was in writing.

The record reveals that ZBS established a separate billing account for the movies Videoland would sell to Blockbuster. These movies were reflected in invoices marked "Videoland B."

In July 1991, Blockbuster received three hundred movies from Videoland. In August, Blockbuster received five hundred or six hundred movies and by September it was receiving the agreed-upon one thousand movies per month.

On November 22, 1991, ZBS Vice–President Schultz contacted Videoland and informed it that ZBS would no longer honor the agreed-upon credit line of $150,000 and sixty-day terms. Schultz informed Videoland that ZBS President Larry Beyer decided not to provide any additional movies to Videoland for resale to Blockbuster. The reason given for the decision was that Beyer was not comfortable with Blockbuster Video or its financial stability. ZBS refused Videoland's request to continue to supply the movies until a new supplier could be found. As a result, Videoland was unable to supply the movies to Blockbuster and the agreement between Blockbuster and Videoland was immediately terminated.

ZBS moved for a directed verdict at the close of Videoland's case-in-chief and at the close of all evidence. ZBS argued that Videoland's contract claim was barred by the Statute of Frauds contained in R.C. 1335.05. Additionally, ZBS argued that Videoland's proof of damages was too speculative to submit the issue to the jury. The trial court denied the motion for directed verdict and the counterclaim was submitted to the jury. The jury returned a general verdict in favor of Videoland in the amount of $210,000. Thereafter, ZBS moved for judgment notwithstanding the verdict, or, in the alternative, a new trial. Specifically, ZBS asserted that expectancy damages or lost profits were not recoverable in promissory estoppel actions. The trial court denied the ZBS motion for post-trial relief and the instant appeal followed.

The assignments of error raised by ZBS are subject to the same standard of review and thus will be addressed collectively. They provide:

"I. The trial court erred in failing to direct a verdict in favor of plaintiff with respect to the defendant's breach of contract counterclaim.

"II. The trial court erred in failing to direct a verdict in favor of plaintiff with respect to the defendant's promissory estoppel counterclaim.

"III. The trial court erred in denying plaintiff's motion for judgment notwithstanding the verdict, or, in the alternative, a new trial."

The test that must be applied by the trial court in ruling on a motion for directed verdict or a motion for judgment notwithstanding the verdict is set forth in *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St.2d 271, 74 O.O.2d 427, 344 N.E.2d 334. Therein, the Ohio Supreme Court explained at 275, 74 O.O.2d at 430, 344 N.E.2d at 338:

"The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a

directed verdict. The evidence adduced at trial and the facts established by admissions in the pleading and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions. * * *" (Citations omitted.)

Moreover, we note that a review of a motion for a directed verdict does not involve weighing the evidence, but rather involves consideration of the legal sufficiency of the evidence to submit the case to the jury. A motion for a directed verdict thus raises a question of law. *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 68, 23 O.O.3d 115, 116, 430 N.E.2d 935, 937–938.

In the first assignment of error, ZBS argues that it was entitled to judgment on Videoland's breach-of-contract claim. Specifically, ZBS contends that uncontroverted evidence presented at trial established the oral contract between ZBS and Videoland was for a definite term of two years. Thus, it is maintained that the breach-of-contract claim is barred by the Statute of Frauds contained in R.C. 1335.05. The argument has merit.

R.C. 1335.05 provides in relevant part:

"No action shall be brought * * * upon an agreement that is not to be performed within one year from the making thereof, unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized."

An alleged oral contract is unenforceable pursuant to the Statute of Frauds contained in R.C. 1335.05 where the agreement is not to be fully performed within a one-year period. *Shepherd v. Westlake* (1991), 76 Ohio App.3d 3, 600 N.E.2d 1095; *DeCavitch v. Thomas Steel Strip Corp.* (1990), 66 Ohio App.3d 568, 585 N.E.2d 879; *Pullar v. Upjohn Health Care Serv., Inc.* (1984), 21 Ohio App.3d 288, 21 OBR 433, 488 N.E.2d 486.

By all accounts presented below, the alleged agreement was intended by the parties to be for a term of two years. As such, the agreement was not to be fully performed within one year and was, therefore, unenforceable. Accordingly, we find that the trial court should have directed a verdict in favor of ZBS on Videoland's breach-of-contract claim pursuant to the Statute of Frauds contained in R.C. 1335.05.

In the second assignment of error, ZBS argues that it was entitled to a directed verdict on Videoland's promissory estoppel claim. Specifically, ZBS

contends that it is entitled to judgment as a matter of law because Videoland failed to prove its lost profit damages with sufficient certainty. The argument lacks merit.

Lost profits may be recovered by a plaintiff in an appropriate case where "the profits are not remote and speculative and may be shown with reasonable certainty." *Charles R. Combs Trucking, Inc. v. Internatl. Harvester Co.* (1984), 12 Ohio St.3d 241, 12 OBR 322, 466 N.E.2d 883, paragraph two of the syllabus. Moreover, it has been stated that "the amounts of lost profits, as well as their existence, must be demonstrated with reasonable certainty." *Gahanna v. Eastgate Properties, Inc.* (1988), 36 Ohio St.3d 65, 521 N.E.2d 814, syllabus.

The evidence adduced below established that ZBS agreed to supply Videoland with one thousand movies per month at a cost of $60 per movie for a period of two years. Videoland would rent those movies for forty-five days at a fee of $2 per day. Videoland's owner testified that, consistent with industry standards, his stores would rent the movies for at least thirty of the forty-five days, thereby recovering the full $60 cost of the movies. The owner's testimony was supported by business consultant Don Bucci, who also stated that Videoland would recover the full cost of the movies within the forty-five-day rental period.

At the conclusion of the forty-five-day rental period, Blockbuster agreed to purchase one thousand of the movies per month from Videoland at a cost of $30 per movie. Under this arrangement, Videoland would earn a profit of $30,000 per month without incurring additional expenses ($30 per movie times one thousand movies).

We find that the lost profits were not remote or speculative and were shown with reasonable certainty. Videoland produced sufficient evidence showing that a profit would have been realized if ZBS continued honoring the promised credit terms. Accordingly, we find that the trial court correctly denied the motion for a directed verdict on Videoland's promissory estoppel claim based on the argument that the lost profits were too speculative.

In the third assignment of error, ZBS argues it was entitled to judgment notwithstanding the verdict, or, in the alternative, a new trial. In essence, ZBS contends that Ohio law does not permit recovery of lost profits or expectancy damages in a promissory estoppel action. The argument lacks merit.

We agree with and adopt the following analysis of the Hamilton County Court of Appeals which appears in *Ohio Knife Corp. v. A.C. Strip* (Oct. 21, 1992), Hamilton App. Nos. C–910482 and C–910488, unreported, 1992 WL 308365, regarding the recovery of damages in a promissory estoppel action:

"In general, the law of contract recognizes three compensable interests: a restitution interest, a reliance interest, and an expectation interest. We are

concerned here with only the latter two. As stated by Calamari and Perillo: 'The reliance interest represents the detriment [the promissee] may have incurred by changing his position. The expectation interest represents the prospect of gain from the contract.' Calamari and Perillo, Contracts (2 Ed.1977) 522, Section 14–4. The availability of both expectancy and reliance damages in a promissory-estoppel action was discussed by the court in *Mers v. Dispatch Printing Co.* (1988), 39 Ohio App.3d 99, 105, 529 N.E.2d 958, 966. A damage award in a promissory estoppel claim can be based upon either reliance damages or expectancy damages. 1A Corbin, Corbin on Contracts (1963) 221, Section 200. The remedy should depend on what justice requires in a particular case. Factors to be considered are the definiteness in measuring the damages caused by the reliance and whether the promise relied upon obligates the promisor into the future. 1A Corbin, Corbin on Contracts (1963) 221, Section 200, 240–241, Section 205." See, also, *Evets Elec., Inc. v. Ohio Edison Co.* (Dec. 20, 1991), Trumbull App. No. 89–T–4289, unreported, 1991 WL 274243; *Pieper v. Gunderman* (Sept. 16, 1991), Paulding App. No. 11–90–15, unreported, 1991 WL 216786.

 Consistent with the above-cited authority, we find that a plaintiff may recover expectancy damages, including lost profits, in a promissory estoppel action where, as here, the promise relied upon obligates the promisor into the future and those damages are demonstrated with reasonable certainty. Accordingly, we find that ZBS was not entitled to judgment notwithstanding the verdict or a new trial based on the argument that lost profits or expectancy damages were not recoverable in a promissory estoppel action.

Consistent with our disposition of the assignments of error presented for review, we affirm the judgment below on the basis that the jury correctly found in favor of Videoland on its promissory estoppel claim.

*Judgment affirmed.*

SPELLACY and MATIA, JJ., concur.