BEHM et al., Appellants,

v.

VICTORY LANE UNIT OWNERS' ASSOCIATION, INC. et al., Appellees.

[Cite as *Behm v. Victory Lane Unit Owners' Assn., Inc.* (1999), 133 Ohio App.3d 484.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–971000.

Decided Feb. 19, 1999.

*Rex A. Wolfgang,* for appellants.

*John K. Hurd* and *John C. Greiner,* for appellees.

HILDEBRANDT, Judge.

Plaintiffs-appellants, Jo Ann Behm and Elizabeth Dodson, appeal the judgment of the Hamilton County Court of Common Pleas granting a directed verdict in favor of defendants-appellees, Victory Lane Unit Owners' Association, Inc., Barry

Tingley, Lori Homel, and Tim Emerson,[1] in a case involving maintenance of a condominium complex. For the reasons that follow, we reverse the trial court's judgment and remand the cause for a new trial.

Behm and Dodson are unit owners at the Victory Lane Condominiums. In 1996, they filed a complaint against the board, alleging that it had failed to properly maintain the property. The complaint included claims for breach of contract and breach of the board's fiduciary duty to the unit owners.[2]

The case proceeded to a jury trial in October 1997. The focus of the trial was the board's alleged failure to maintain and repair the condominium building's foundation. Behm and Dodson alleged that cracks in the foundation became evident in 1993 and that several estimates for structural repair had been submitted to the board. Three of the estimates were received in evidence: a bid for underpinning the foundation submitted in November 1993 in the amount of $11,400, a bid for underpinning submitted in April 1994 in the amount of $19,260, and a bid for underpinning submitted in February 1996 in the amount of $38,000.

The evidence indicated that the underpinning work had not been performed as of the date of trial and that the only action taken with respect to the foundation was the placement of monitors on the building to determine if any further settling was occurring. Behm and Dodson claimed that the failure to repair the foundation constituted a breach of the board's duty pursuant to statute and pursuant to the condominium declaration to maintain the common areas of the development. They sought damages for their pro-rata share of the increase in repair costs due to the board's delay, *i.e.*, the increase from $11,400 to $38,000. Behm also sought compensation for alleged damage to her unit as a result of the foundation problems.

Behm and Dodson also adduced evidence as to other alleged failures on the part of the board to maintain the common areas of the condominium property. These allegations included failure to properly light certain areas, such as the laundry room, failure to adequately maintain the trash-disposal area, and failure to maintain the development's landscaping. Behm and Dodson sought loss-of-use damages for these alleged breaches.

At the close of the plaintiffs' case-in-chief, the trial court granted the board's motion for a directed verdict. The trial court found that the foundation work

---

1. The individual appellees comprise the board of managers for the Victory Lane Unit Owners' Association, Inc. For the sake of brevity, we refer to the defendants-appellees as the "board."

2. In Count II of the complaint, Behm and Dodson alleged that the board had failed to maintain adequate funds to complete the repairs and had failed to make adequate assessments for the repairs. These allegations were essentially subsumed in the other counts of the complaint.

constituted a "capital improvement" or "structural alteration" within the meaning of the condominium bylaws and that a vote of the entire association's membership was required to authorize the underpinning. The court therefore held that the board did not have a duty to implement the improvements and consequently was not liable for any failure to have the work completed. The trial court also held that Behm and Dodson had failed to demonstrate damages resulting from the alleged acts or omissions of the board. The instant appeal followed.

In their first assignment of error, Behm and Dodson contend that the trial court erred in granting the board's motion for a directed verdict. We find this assignment of error to be well taken.

■ The question to be resolved upon a motion for a directed verdict is whether, construing the evidence in the nonmoving party's favor, reasonable minds can only conclude in favor of the moving party.[3] Only when that question can be answered in the affirmative is the granting of the motion proper.[4]

■ In the case at bar, we hold that the trial court erred in granting the board's motion. We begin by examining the nature of the board's duty to maintain the common areas of the property. First, Section 5.1, Article V of the condominium declaration requires the homeowners' association to provide for the maintenance, repair, and improvement of the common areas. Second, R.C. 5311.14(A) provides that "[u]nless provided otherwise in the declaration, damage to or destruction of all or any part of the common areas and facilities of a condominium property shall be promptly repaired and restored by the manager or board of managers." Thus, by contract and by statute, the board of the homeowners' association in the instant case was obligated to maintain and repair the common areas. As Behm and Dodson assert, both the declaration and the statute impose a fiduciary duty on the part of the homeowners' association and the board in particular to act in the best interests of the property owners.[5] It is

---

3. *Shepherd v. Westlake* (1991), 76 Ohio App.3d 3, 11, 600 N.E.2d 1095, 1100.

4. *Id.*

5. Though there is apparently no Ohio case law stating that a homeowners' association or its board stands in a fiduciary relationship to the unit owners, the Supreme Court of Ohio has held that " '[a] "fiduciary relationship" is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust.' " *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.* (1993), 67 Ohio St.3d 274, 282, 617 N.E.2d 1075, 1082, quoting *In re Termination of Emp. of Pratt* (1974), 40 Ohio St.2d 107, 115, 69 O.O.2d 512, 517, 321 N.E.2d 603, 609. Clearly, the authority granted the board to maintain the common areas of the property carries with it the duty to exercise that authority in the best interests of the homeowners.

undisputed in the instant case that the foundation is part of the common area of the development.

■ As noted above, the trial court's granting of the motion for direct verdict was premised in part on its definition of the terms "capital improvement" and "structural alteration." Pursuant to the homeowners' association bylaws, the board was required to gain the approval of a majority of the association's members for any "capital improvement" or "structural alteration" requiring an expenditure of more than $1,000. The board asserts, and the trial court held, that the foundation work outlined in the estimates submitted to the board constituted a capital improvement or structural alteration, and that therefore no duty arose on the part of the board to implement the work absent a vote of the membership. Behm and Dodson contend that the foundation underpinning was maintenance within the meaning of the bylaws, and that therefore the duty to cause the work to be done, if proven, would devolve upon the board alone.

We agree with Behm and Dodson. The terms "capital improvement," " structural alteration," and "maintenance" are not defined in the condominium's bylaws or declaration. Nevertheless, we hold the definitions adopted by the trial court to be reasonable. The trial court, citing Black's Law Dictionary, stated that an alteration or improvement involves the change of a thing from one form or state to another, whereas maintenance contemplates the restoration of a thing to its original condition. The parties apparently concur in these definitions.

Though we agree with the trial court's definition of the terms, we do not agree with the court's application of the definitions to the case at bar. The evidence adduced at trial indicated that the foundation underpinning was required not to change or alter the building but rather to restore the building's structural integrity. The foundation work did not entail anything other than preventing the further subsidence of the building, thus permitting the cracks and other defects resulting from the subsidence to be corrected. Thus, while the underpinning was indisputably a large undertaking, the work set forth in the estimates fell squarely within the definition of maintenance as adopted by the trial court. We hold, therefore, that the trial court erred in ruling, as a matter of law, that the board had no duty to implement the repairs.[6]

■ The board contends, however, that even if the trial court's decision with respect to its duty was incorrect, the granting of the directed verdict was

---

6. The trial court apparently placed a great deal of emphasis on the fact that Behm had at one time expressed the opinion that the underpinning was a capital improvement. That opinion, however, was not dispositive of the legal issue facing the court. Of course, we do not hold that the board did in fact have a duty to contract for the underpinning, but only that the granting of the directed verdict was erroneous.

nonetheless proper as to the issue of damages. We disagree. Construing the evidence most strongly in favor of Behm and Dodson, as we are required to do, we conclude that the trial court erred in ruling that damages had not been proven. Behm and Dodson presented some evidence that the board's delay in correcting the foundation problem had caused the increase in cost for having the work done, thereby resulting in added costs to the unit owners.[7] Behm also presented evidence that the foundation problems had led to cracking, water damage, and other defects in her unit. Finally, both plaintiffs presented evidence that they had suffered damages due to the alleged failure of the board to maintain the laundry area, the trash-disposal area, and other common areas of the property. Therefore, the granting of the motion for directed verdict was improper, and the first assignment of error is sustained.[8]

In the second and final assignment of error, Behm and Dodson argue that the trial court erred in ruling that the complaint failed to allege a duty on the part of the board to maintain the common areas and in denying their motion to amend the complaint pursuant to Civ.R. 15. As for the first issue, it does not appear from the record that the trial court found any deficiencies in the pleadings. Rather, the directed verdict was granted on the basis that the board had no duty to repair under the language of the bylaws and that Behm and Dodson had failed to prove damages. We therefore find no merit in this argument.

 We also find no error in the trial court's denial of the motion to amend. The decision to grant or deny a Civ.R. 15(B) motion to amend pleadings is within the discretion of the trial court and will not be reversed absent an abuse of that discretion.[9] An abuse of discretion means more than a mere error of law or judgment; it implies that the court's decision was arbitrary, unreasonable, or unconscionable.[10] In the instant case, Behm and Dodson did not specify to the trial court what amendment or amendments they sought to make to the complaint and have not done so on appeal. Accordingly, we find no abuse of discretion on

---

7. The board argues that the difference in cost is attributable to differences in the specific type of underpinning proposed in the estimates and not due to a deterioration .in the foundation over time. Still, there is some evidence in the record to support the contention that delay was the cause for the increased cost, thus rendering the directed verdict improvident.

8. Behm and Dodson have asked this court to enumerate the precise measure of damages to be applied on remand. This issue, however, is not ripe for review, as the trial court did not reach the issue of what damages were to be submitted to the jury. Thus, we decline to address the issue. See, generally, *Star Bank, N.A. v. Moore* (Sept. 21, 1994), Hamilton App. No. C–930333, unreported, 1994 WL 513664, jurisdictional motion overruled (1995), 71 Ohio St.3d 1467, 644 N.E.2d 1388.

9. *Spisak v. McDole* (1984), 15 Ohio St.3d 62, 63, 15 OBR 157, 157–158, 472 N.E.2d 347, 348.

10. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

the part of the trial court in denying the motion, and we hereby overrule the second assignment of error.

The judgment of the trial court is reversed, and the cause is remanded for a new trial consistent with the foregoing.

*Judgment reversed*
*and cause remanded.*

DOAN, P.J., concurs.

PAINTER, J., concurs separately.

PAINTER, Judge, concurring.

I concur with Judge Hildebrandt's excellent opinion, but feel compelled to express my disbelief that anyone could seriously contend that the board of managers of a condominium unit owners association does not owe a fiduciary duty to the unit owners. Though the developer of the condominium project initially appoints board members who must serve two masters and who could possibly advance such a proposition, that is not the situation here. Here, the unit owners of this long-existing condo elect all the board members who are beyond cavil fiduciaries. What else could they be?

It is also impossible to understand the confusion in this case, between (a) repair and maintenance, and (b) improvement. Preventing the collapse of a building is necessary maintenance, not an improvement.