DECISION
{¶ 1} This is the second appeal in a products-liability case brought by the plaintiffs-appellants, Shawna L. Lewis, and her husband, James, against Clark Equipment Company. Clark was the manufacturer of an ESM (electric standup multi-tire forklift) that Shawna Lewis was operating for her employer, the U.S. Playing Card Company, when she suffered a severe injury to her left foot. The Lewises' claims against Clark were based upon an alleged design defect in the braking system of the ESM, as well as an alleged inadequacy in the warnings provided with the equipment. The Lewises also brought a negligence claim against Portman Equipment Company, which had contracted to perform periodic maintenance on the ESM. The trial court granted a directed verdict in favor of Clark, and a jury returned a verdict in favor of Portman.
 {¶ 2} In the first appeal of this case, we reversed the trial court's judgment with respect to Clark, holding that the court had failed to properly articulate its reasons for granting the company a directed verdict. Lewis v. Clark Equipment Co. (Dec. 14, 2001), 1st Dist. Nos. C-990441, C-990687, and C-990714. The case was remanded with instructions to the trial court "to articulate the basis on which it [had] granted the directed verdict in favor of Clark." The trial court complied with our mandate, and it is from that order that the Lewises bring this second appeal.
 {¶ 3} In their sole assignment of error, the Lewises assert that the trial court erred by directing a verdict in favor of Clark, because they had presented substantial evidence on each element necessary to support their claims that the ESM was defectively designed and provided with inadequate warnings. They narrow the discussion to a single issue in their brief: whether the trial court erred on the basis that Clark had sent a remedial service manual regarding the ESM not to the end user, U.S. Playing Card, but to the ESM's service provider, Portman. For the reasons that follow, we disagree and thus affirm.
 {¶ 4} The Lewises alleged that the accident occurred because the brakes of the ESM had failed as Shawna Lewis was backing up, causing her foot, which was outside the vehicle, to be crushed against a wall. The Lewises claimed that the ESM's non-self-adjusting brakes had "bottomed out," meaning that the pads had worn down, extending the linkage and causing the braking system to fail to deliver the necessary force. The Lewises presented evidence that Clark had become aware of a potential problem with the brake adjustment on the ESM and had taken the precaution of distributing to service managers such as Portman an updated service manual referred to as "Field Campaign 130."
 {¶ 5} The manual gave service providers very specific instructions on maintenance of the ESM's brakes and warned of the dangers of improper maintenance. In fact, Field Campaign 130 warned of the condition called "bottoming out" if the brakes were not properly adjusted. Under the heading "IMPORTANT," in bold letters, the manual warned, "The ESM brakes are not self-adjusting, but need to be periodically inspected and adjusted accordingly. If adjustments are not made as required, the slave cylinder can run out of stroke, and the springs will not apply the brakes. This condition will not be a sudden event, but will result in the gradual loss of braking capability. * * * Checking the brake adjustment setting in addition to the driving test must be part of the Planned Maintenance Program. When the covers are removed for air cleaning, the travel controls, the brake arm positioning and lining wear must be inspected, recorded and corrected as necessary."
 {¶ 6} As noted, Clark provided the manual to Portman. The Portman mechanic who was responsible for servicing the ESM driven by Shawna Lewis was Mike Featherkile. Featherkile testified that he had never consulted the updated service manual and instead had performed his own self-devised operational check on the vehicle's brakes. Portman's maintenance records revealed that no brake adjustment had been performed on the ESM in question until six months after Shawna Lewis's accident.
 {¶ 7} Through cross-examination, Clark disclosed that Shawna Lewis had not paid heed to numerous warnings on the forklift itself, instructing her to keep her feet inside the operator compartment. These warnings included one on the ESM's control panel that stated, "Keep your head, hands, and feet inside the operator compartment." Also, an operator's manual was tethered to the forklift that contained a warning sign with an exclamation point that gave the same message. Other pages in the manual admonished the operator to keep his or her body, including arms and feet, inside the operator compartment. During her testimony, Shawna Lewis conceded that, had she read the warnings Clark had provided, she would have been more careful in keeping her foot inside the compartment.
 {¶ 8} In granting a directed verdict in favor of Clark, the trial court concluded that Portman "did not follow Clark's instructions." The trial court also observed that the Lewises' own expert had testified that if Portman had followed the instructions contained in the Field Campaign 130 manual, the accident that had injured Shawna Lewis's foot would never have happened. Further, the court found that it was "undisputed" that Shawna Lewis had failed to "read and/or heed the warnings provided on and with the forklift," and that it was further "undisputed" that if she had followed the warnings, the accident would have been averted. Accordingly, the trial court found both claims against Clark to be without merit as a matter of law.
 {¶ 9} The Lewises' sole argument in their appellate brief is that the trial court erred by accepting Clark's argument that the company could not be held liable for a design defect because the company had issued detailed instructions and warnings in Field Campaign 130 pertaining to the condition called "bottoming out." The flaw in Clark's argument, the Lewises contend, is that Field Campaign 130 was not distributed to U.S. Playing Card, the product's end user. According to the Lewises, there is no support for the proposition that a manufacturer such as Clark "may warn of defective and dangerous conditions to a third party and then reasonably rely upon that third party to inform the end user."
 {¶ 10} Clark remonstrates that the Lewises' argument is entirely disingenuous because they knew that Field Campaign 130 was, in fact, sent to U.S. Playing Card, evidence of which would have been produced by Clark had the trial court not granted Clark a directed verdict after the close of the Lewises' case. While we obviously cannot proceed upon the basis of evidence not adduced at trial, we are prompted by Clark's argument to wonder where in the record it is established that Field Campaign 130 wasnot sent to U.S. Playing Card, as the Lewises assert as the basis for their argument. The Lewises do not include the alleged omission in their statement of facts. In the argument portion of their brief, they state, "In the instant case, Field Campaign 130 was published in a service manual which was provided only to Portman Equipment Company, not to the end user." This statement is not followed by any citation to the record. Our own review of the voluminous record in this case has not disclosed any evidence of such an omission.
 {¶ 11} Counsel for the Lewises also strongly implies in his brief that, while arguing the company's motion for a directed verdict before the trial court, counsel for Clark conceded that Field Campaign 130 was "delivered not to U.S. Playing Card or the department operating the forklift." We have reviewed counsel's argument, however, and have found no such concession. Similarly, we have reviewed the argument of the Lewises' counsel in the trial court, opposing Clark's motion, and have found that nowhere did counsel make the argument that the warning was defective because Field Campaign Manual 130 was not sent to U.S. Playing Card's corporate headquarters. Instead, counsel for the Lewises opposed the motion on the grounds that the warnings contained in Field Campaign 130 were insufficient given the magnitude of the risk, and that Clark should have instead ordered a product recall to install self-adjusting brakes at the company's expense.
 {¶ 12} Obviously, unless there is some evidence affirmatively establishing that Field Campaign 130 was not sent to U.S. Playing Card, we have no basis to validate the Lewises' assertion that such omission led to reversible error. Our review of the arguments made by both counsel when debating the merits of Clark's motion for a directed verdict shows that whether the manual was sent to U.S. Playing Card was not even discussed at the time. The arguments were clearly focused on the sufficiency of Field Campaign 130 (as compared to a product recall) and whether Featherkile's decision to ignore the manual rendered such a discussion moot from the standpoint of establishing proximate cause.
 {¶ 13} Even if it were established that Clark had not sent a copy of Field Campaign 130 to U.S. Playing Card, and even if this failure had been raised as a ground for opposing Clark's notion for a directed verdict, we still are not persuaded that such an omission would have by itself created error in the trial court's granting of the motion. R.C.2307.76(A)(2) provides, in pertinent part, that a product is defective due to "inadequate post-marketing warning or instruction" if the manufacturer (1) knew or should have known of a risk associated with the product, and (2) "failed to provide the post-marketing warning or instruction that a manufacturer, exercising reasonable care, would have provided concerning that risk, in light of all likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages and in light of the likely seriousness of the harm." The standard for determining the adequacy of a warning is identical in both strict-liability and negligence claims. Welch Sand Gravel,Inc. v. O K Trojan, Inc. (1995), 107 Ohio App.3d 218, 226,668 N.E.2d 529. The standard is whether the manufacturer took precautions that a reasonable person would have taken in presenting the product to the public. Id., citing Crislip v. TCH Liquidating Co. (1990), 52 Ohio St.3d 251, 556 N.E.2d 1117.
 {¶ 14} In Welch, the question whether the warnings were reasonable focused on whether the warnings were designed to reach the product's end user because the product, a front-end loader, was known in the industry to be commonly modified with twelve-, rather than twenty-four-, volt accessories. Given this evidence of the existence of a common, and therefore foreseeable, product alteration, we held that there was an issue whether the warning by the manufacturer against such modifications — which was given only to the first owner upon delivery — was reasonably calculated to reach other end users. Id. We did not mean to suggest, as the Lewises argue, that a warning is per se unreasonable in every case unless it reaches the hands of the person or entity that could be called the end user.
 {¶ 15} Here, even if we were to assume that Clark did not send a copy of Field Campaign 130 to U.S. Playing Card's corporate headquarters, Clark did insure that the service manual was sent to the company in charge of maintaining U.S. Playing Card's ESMs Portman Equipment Company. Clearly, it would seem, this was a warning reasonably calculated to reach the end user. Furthermore, there is absolutely no evidence upon which the jury could have inferred that if the service manual had been sent to U.S. Playing Card (assuming for the sake of argument that it was not), it would have ended up anywhere else but in the hands of Featherkile and received from him the same level of attention that he had shown the other copy of the manual sent by Clark to Portman — none.
 {¶ 16} A motion for a directed verdict presents a question of law. An appellate court must construe the evidence most strongly in favor of the non-moving party and determine whether reasonable minds could only conclude in favor of the movant. Shepard v. Westlake (1991),76 Ohio App.3d 3, 600 N.E.2d 1095. The only argument presented to us by the Lewises is that the granting of the motion was in error because Field Campaign 130 was not delivered to the ESM's end user, U.S. Playing Card. Having found no evidence in the record to support this assertion, and nothing to show that this issue was ever raised below, and further finding no basis to reverse the court's judgment even if the issue had been raised, we affirm the judgment below.
Judgment affirmed.
PAINTER, P.J., GORMAN and SUNDERMANN, JJ.