**BENNER et al., Appellees,**

v.

**HAMMOND et al., Appellants.**

[Cite as *Benner v. Hammond* (1996), 109 Ohio App.3d 822.]

Court of Appeals of Ohio,
Fourth District, Ross County.

No. 95CA2116.

Decided March 15, 1996.

*Fosson, Mann & Preston* and *James L. Mann,* for appellants.

*Ward, Kellenberger, Nusbaum & Wissler* and *Jack C. Kellenberger,* for appellees.

---

KLINE, Judge.

This appeal arises from the granting of an injunction by the Ross County Court of Common Pleas. Plaintiffs-appellees Mark A. Benner and fifteen neighbors in the Sunset View Subdivision, Block A of Union Township (hereinafter "Sunset View"), successfully obtained an injunction ordering defendant-appellant Jeffrey A. Hammond [1] to remove his manufactured home from lot twenty-five of Sunset View. Appellant was the owner of lot twenty-five, but his deed, as well as the appellees' deeds, referred to restrictions filed with the Ross County Recorder's Office which prohibited the use of a trailer as a residence. The trial court found that appellant's manufactured home was a trailer barred by the restrictive covenant and therefore granted the injunction.

Appellant appeals and presents a wealth of assignments of error:

"I. The trial court erred as a matter of law in holding that the issue before the court was whether the 1994 Champion Home placed on lot twenty-five by appellant was a trailer within the meaning of restrictive covenant number eight.

"II. The trial court erred as a matter of law in holding that defendant-appellant's home must be determined to be a house trailer because of the provisions of section 4501.01(O) of the Revised Code which were in effect in 1983.

"III. The trial court erred as a matter of law in holding that the character of the home for purposes of the restrictive covenant must be determined based upon the condition of the home at the time it was brought to the lot and not as it appeared later after it had been erected.

"IV. The trial court erred and judgment was against the manifest weight of the evidence in holding that the appellant's home was not attached to a permanent foundation.

"V. The trial court erred as a matter of law in applying as controlling the decision of the Ross County Common Pleas Court in Ellis v. Caplinger (Nov. 9, 1990), Ross Cty. C.P. No. 90–CI–257, unreported.

---

1. We will refer to Hammond as the appellant for the remainder of this opinion. The manufacturer and installer of the mobile home, J.M. Mobile & Modular Homes, is also a defendant-appellant. Additionally, J.M. Mobile & Modular Homes was the prior owner and subsequent grantor to Hammond of lot twenty-five in Sunset View.

"VI.  The trial court erred and its judgment was against the manifest weight of the evidence in holding that the appellees had proved by clear and convincing evidence that they had sustained irreparable damage because the value of their homes had been diminished by the presence of appellant's home.

"VII.  The trial court erred as a matter of law in holding that the appellees had sustained irreparable damage because appellant's home would cause the style of the subdivision to be altered.

"VIII.  The trial court erred as a matter of law by applying the wrong legal standard to the application of the restrictive covenant.

"IX.  The trial court erred as a matter of law by interpreting the restrictive covenant to hold that all manufactured homes are trailers;  that manufactured homes are therefore temporary structures;  and that therefore all manufactured homes are excluded from this subdivision or any subdivision containing the language of the restrictive covenant at issue in direct violation of controlling federal law."

Sunset View restrictive covenant number eight filed on December 22, 1983 states:

"*Temporary Structures.*  No structures of a temporary character, trailer, basement, tent, shack, garage, barn, or other out building shall be used on any lot at any time as a residence, either temporarily or permanently."

Appellees urge that appellant's structure is either a trailer or of a temporary character.

Appellant's structure is a 1994 Champion Model 045 manufactured home which appellees characterize as a double-wide mobile home.  The structure arrived at appellant's lot in two sections on wheels and with tongues attached to trucks. The wheels and tongues were removed, and the structure was placed upon a foundation.  The foundation consisted of concrete footing installed thirty-eight to forty-two inches below grade supporting above-grade piers and a perimeter wall, both of concrete blocks which were not mortared together.  The president of J.M. Mobile & Modular Homes, the manufacturer of the structure, testified that there is no need to mortar the blocks above grade because the pressure of the structure keeps the blocks in place. Wood blocks were placed between some of the concrete blocks and the structure for balance.  The home is also anchored to the ground.  The trial court termed appellant's foundation as temporary.

The structure is ranch-style and encompasses seventeen hundred square feet. Drywall is used throughout the interior of the structure, while the exterior is covered with vinyl siding.  Plumbing, electric, and heating were installed at the

factory. The roof is pitched and covered with shingles. Appellant added a site-built garage which attached to the structure, a large deck, and landscaping.[2]

Appellant financed the structure and lot by means of a mortgage. The mortgage originally covered only the lot, while the manufactured home was covered by a separate security interest. However, once the structure was completed, the title of the structure was surrendered to the Ross County Auditor[3] and the security interest on the structure merged into the mortgage. See 1993 Ohio Atty.Gen.Ops. No. 93–078. Further, the surrendering of title to the auditor dictates that the structure will be taxed as part of the real property instead of as a mobile home. See R.C. 4503.06(F)(1); R.C. 5701.02; 1993 Ohio Atty.Gen.Ops. No. 93–078. Appellant initially paid motor home taxes in the amount $369.77. See R.C. 4503.06.

J.M. Mobile & Modular Homes started to move the structure onto appellant's property on May 3, 1994. Appellees filed a complaint on May 25, 1994, seeking a temporary restraining order, which the trial court subsequently denied, and an injunction. A hearing on the permanent injunction was held on August 25, 1994 and October 6, 1994. The trial court found that appellant's structure was a trailer pursuant to the restrictive covenant and that appellees were entitled to enforce the restrictive covenant. The trial court therefore granted an injunction ordering appellant to remove the structure from lot twenty-five in Sunset View. At the time the injunction was granted, appellant's structure was fully installed, the deck was built, and the garage was completed.

■ We first address appellant's second, third, fifth, and eighth assignments of error. Appellant, in these assignments of error, challenges the trial court's interpretation of the restrictive covenant. At issue is whether appellant's structure is a trailer. If appellant's structure is not a trailer, the restrictive covenant has not been violated.

---

2. The base price of the manufactured home was $42,900. Appellant purchased numerous additional factory installed features which increased the cost of the structure. Appellant incurred further costs due to work done on the lot: the cost of the garage was $4,000, the cost of the foundation was $4,000, the cost of the lot was $10,500. Dewey Price, a real estate appraiser, testified that appellant's property and structure were valued at $62,850. Appellees valued their own homes at values ranging from $65,000 to $75,000 prior to the installation of appellant's structure. Appellant disputed these values.

   We note that restrictive covenant number three of Sunset View prohibits dwellings that cost less than $20,000 based upon the cost levels prevailing at the time the restrictions were filed. Appellant's structure clearly satisfies this covenant.

3. The Ross County Auditor file-stamped approval of the manufactured home transfer on September 12, 1994. A file-stamped copy was entered as an exhibit at the injunction hearing.

Restrictive covenants in deeds are generally enforceable, unless contrary to public policy, if the purpose is to establish a general scheme in a tract of property to make it more attractive for residential purposes. *Dixon v. Van Sweringen Co.* (1929), 121 Ohio St. 56, 166 N.E. 887, paragraph one of the syllabus. Determining the intent of the parties through the language the parties have employed is the goal of interpreting a restrictive agreement. *Hitz v. Flower* (1922), 104 Ohio St. 47, 57, 135 N.E. 450, 453–454. The court must construe the language of the covenant by giving it its common and ordinary meaning in light of the factual circumstances surrounding the writing of the restrictive covenant. *Arnoff v. Chase* (1920), 101 Ohio St. 331, 335, 128 N.E. 319, 320; *Hunt v. Held* (1914), 90 Ohio St. 280, 287, 107 N.E. 765, 767–768. Further, where the language contained in a deed restriction is unclear and capable of contradictory interpretation, the deed restriction must be construed against the restriction and in favor of the free use of land. *Houk v. Ross* (1973), 34 Ohio St.2d 77, 63 O.O.2d 119, 296 N.E.2d 266, paragraph two of the syllabus; *Bove v. Giebel* (1959), 169 Ohio St. 325, 8 O.O.2d 341, 159 N.E.2d 425, paragraph one of the syllabus; *Hitz v. Flower, supra.*

As the prototypical trailer has evolved, questions have arisen concerning whether certain structures, often called manufactured homes, are still properly referred to as trailers. This semantical query has become most important in the interpretation of restrictive covenants prohibiting trailers. Appellees argue that these new structures are still properly referred to as trailers because the word trailer is defined by mobility and the mode of delivery. These new structures arrive on wheels with tongues which may be reattached and thus remain mobile. See *LuMac Dev. Corp. v. Buck Point, L.P.* (1988), 61 Ohio App.3d 558, 566, 573 N.E.2d 681, 686. Conversely, appellant argues that these structures when installed are permanent and therefore lose the label of trailer as they lose their mobility. See *Moscow v. Skeene* (1989), 65 Ohio App.3d 785, 789, 585 N.E.2d 493, 495; *Sylvester v. Howland Twp.* (1986), 34 Ohio App.3d 270, 271, 518 N.E.2d 36, 37–38. See, generally, 5 Powell on Real Property (1968), 60–88.12 to 60–88.13, fn. 19; Annotation, What is "Temporary" Building or Structure within Meaning of Restrictive Covenant (1986), 49 A.L.R.4th 1018, 1025–1040; Annotation, Use of Trailer or Similar Structures for Residential Purposes as within Limitation of Restrictive Covenant, Zoning Provision, or Building Regulation (1964), 96 A.L.R.2d 232, 263, Section 15.

These opposing views on whether manufactured homes are barred by restrictive covenants prohibiting trailers center on (1) the period when the structure should be evaluated to determine whether it is a trailer and (2) the mobility of manufactured homes once installed. Addressing the first issue, the trial court held that the condition of the structure at the time it was brought to

the lot, as opposed to once it was installed, was the proper time for evaluation. The trial court essentially found that the plain meaning of "trailer" was epitomized by the structure's being placed on wheels and towed by a truck and that appellant's structure could not lose this quality no matter how it was installed. We disagree. The restrictive covenant in the case *sub judice* prohibits the use of a trailer as a temporary or permanent residence. The plain meaning of "used * * * as a residence" dictates that the structure should not be evaluated as it arrives or by its state in transit.[4] Rather, the structure should be evaluated once it is installed on the real property and is used as a residence. See, also, *Sylvester v. Howland Twp., supra.* Further, it would be a strange result for the law of real property to consider the state of an object before it arrives on the restricted real property as controlling rather than the nature of the object as it appears on the real property.

We now consider whether appellant's structure as installed retains indicia of mobility, indicating that it is a trailer, or whether it has lost its mobility, indicating that it is not a trailer. This inquiry dovetails with the appellees' charge that appellant's structure is of a temporary character. The trial court noted that "house trailer"[5] was a statutorily defined term when the restrictive covenant was drafted. The trial court reasoned that the plain meaning of trailer as used in the restrictive covenant was the same as the statutory definition of house trailer. The trial court then held that the meaning of house trailer encompassed the current statutory definition of manufactured home.[6] See *Lu-Mac Dev. Corp. v. Buck Point, Ltd. Partnership, supra.* The trial court's holding is predicated on the assumption that a manufactured home is a temporary, mobile structure because both the statutory definitions of "house trailer" and "manufactured home" refer to the structure as a vehicle and both definitions appear in the

---

**4.** If we were to ignore the language "used * * * as a residence" in restrictive covenant number eight, we would be forced to conclude that all garages and basements are prohibited in Sunset View by restrictive covenant number eight.

**5.** "House trailer" was defined in former R.C. 4501.01(O) as follows:

"[A]ny nonself-propelled vehicle so designed, constructed, reconstructed, or added to by means of accessories in such manner as will permit the use and occupancy thereof for human habitation, when connected to indicated utilities, whether resting on wheels, jacks or other temporary foundation and used or so constructed as to permit its being conveyed upon the public streets or highways." Am.Sub.H.B. No. 53, 139 Ohio Laws, Part I, 1503, 1506.

**6.** "Manufactured home," R.C. 4501.01(O), is defined in part as follows:

"[A]ny nonself-propelled vehicle transportable in one or more sections, which, in the traveling mode, is eight body feet or more in width or forty body feet or more in length or, when erected on site, is three hundred twenty or more square feet, and which is built on a permanent chassis and designed to be used as a dwelling with or without a permanent foundation when connected to the required utilities, and includes the plumbing, heating, air conditioning, and electrical systems contained therein."

chapter on motor vehicles in the Revised Code. In essence the trial court found that appellant's structure retained indicia of mobility as evidenced by an unmortared foundation and the ability to attach tongues and wheels to the structure and to transport the structure to another site.[7]

Conversely, several courts have held that the construction of a suitable foundation for a manufactured home and other improvements to the property, such as a garage, dictate that the manufactured home has lost its indicia of mobility. See *Moscow v. Skeene; Sylvester v. Howland Twp., supra.* In essence, the manufactured home is no longer a vehicle and the definitions of R.C. Title 45 are no longer applicable. These courts theorize that almost any home is movable, and therefore it is unreasonable to harp on the possibility that a manufactured home may be moved when the owner certifies that it will not be moved. This interpretation is buttressed by the procedure whereby a manufactured home owner may submit his manufactured home title to the county auditor, and the manufactured home is thereafter considered part of the real property and is taxed as such. See 1993 Ohio Atty.Gen.Ops. No. 93–078; R.C. 4503.06(F)(1); R.C. 5701.02.

We favor the interpretation of the courts in *Moscow v. Skeene* and *Sylvester v. Howland Twp., supra,* that permitted a manufactured home to be converted into a permanent structure. Appellant has surrendered the title to the manufactured home to the Ross County Auditor and the structure is now considered part of the real property for purposes of real estate taxes as well as appellant's mortgage. Appellant has also constructed an attached garage and deck. We reiterate that where the language contained in a deed restriction is unclear and capable of contradictory interpretations, the deed restriction must be construed against the restriction and in favor of the free use of land. *Houk v. Ross; Bove v. Giebel; Hitz v. Flower, supra.* We therefore interpret restrictive covenant number eight's prohibition of trailers and temporary structures as not encompassing appellant's structure. Accordingly, appellant's second, third, fifth, and eighth assignments of error are sustained and the judgment of the trial court is reversed.

We do not address appellant's other assignments of error due to our disposition of this matter. This case is remanded to the common pleas court with instructions to dismiss for failure to state a claim.

*Judgment reversed.*

---

7. The trial court apparently discounted the parol evidence offered by appellant regarding the intent of restrictive covenant number eight. The restrictive covenants were unilaterally drafted by the developers of Sunset View before any of the lots were sold. One of the developers, Earl Sisson, testified that the developers did not intend to bar manufactured homes but rather only intended to exclude mobile homes.

STEPHENSON, J., concurs.

PETER B. ABELE, P.J., dissents.

STEPHENSON, Judge, concurring.

I concur in the foregoing judgment and opinion on the basis that it is unclear under the language in the deed restriction whether the appellant's manufactured home is to be considered a trailer or a temporary structure. Because there was evidence before the lower court which both supported and contradicted a finding that the appellant's home was a temporary structure or a trailer, the lower court erred in failing to construe the language in the deed restriction against the restriction and in favor of the free use of the land.