GROFF et al., Appellants,

v.

HEATH et al., Appellees.

[Cite as *Groff v. Heath* (1996), 116 Ohio App.3d 300.]

Court of Appeals of Ohio,
Eleventh District, Ashtabula County.

No. 96–A–0033.

Decided Dec. 10, 1996.

*Samuel L. Altier,* for appellants.

*Thomas C. Brown, Kenneth L. Piper* and *Robert S. Wynn,* for appellees.

NADER, Judge.

This is an appeal from an entry of summary judgment in the Ashtabula County Court of Common Pleas. On September 16, 1994, appellants, William J. Groff et al., filed a complaint against appellee Fred Heath, claiming that he intended to place a manufactured home upon a parcel of land in the Pymatuning Acres Allotment, in violation of deed restrictions. The complaint was later amended to

include appellees Paul Bodnar and Michelle Bodnar ("appellees"). Heath has not participated in this appeal. On November 30, 1995, appellants filed a motion for summary judgment. Appellees filed a cross-motion for summary judgment on November 30, 1995. Heath also filed a motion for summary judgment on December 1, 1995. On April 4, 1996, the trial court entered an order granting the motions for summary judgment filed by Heath and appellees, and denying appellants' motion for summary judgment. Appellants timely appealed, contending that the trial court erred in granting appellees' motions for summary judgment and in denying their motion for summary judgment.

In support of their assignment of error, appellants raise two arguments: that appellees' manufactured home constitutes a "trailer," in violation of restrictions appearing in a plat that was recorded on December 27, 1955, and incorporated by reference into appellees' deed to their property, and that the foundation of the manufactured home is less than seven hundred twenty square feet, in violation of the deed restrictions.

In *Benner v. Hammond* (1996), 109 Ohio App.3d 822, 673 N.E.2d 205, the court faced the issue of whether a restrictive covenant prohibiting trailers excluded manufactured homes from the subdivision in question. The *Benner* court summarized at 827, 673 N.E.2d at 208:

"As the prototypical trailer has evolved, questions have arisen concerning whether certain structures, often called manufactured homes, are still properly referred to as trailers. This semantical query has become most important in the interpretation of restrictive covenants prohibiting trailers. Appellees argue that these new structures are still properly referred to as trailers because the trailer is defined by mobility and the mode of delivery. These new structures arrive on wheels with tongues which may be reattached and thus remain mobile. See *LuMac Development Corp. v. Buck Point Ltd. Partnership* (1988), 61 Ohio App.3d 558, 566, 573 N.E.2d 681, 686. Conversely, appellant argues that these structures when installed are permanent and therefore lose the label of trailer as they lose their mobility. See *Moscow v. Skeene* (1989), 65 Ohio App.3d 785, 789, 585 N.E.2d 493, 495; *Sylvester v. Howland Twp.* (1986), 34 Ohio App.3d 270, 271, 518 N.E.2d 36, 37–38. See, generally, 5 Powell on Real Property (1968), 60–88.12 to 60–88.13, fn. 19; Annotation, What is 'Temporary' Building or Structure within Meaning of Restrictive Covenant (1986), 49 A.L.R.4th 1018, 1025–1040; Annotation, Use of Trailer or Similar Structures for Residence Purposes as within Limitation of Restrictive Covenant, Zoning Provision, or Building Regulation (1964), 96 A.L.R.2d 232, 263, Section 15."

The *Benner* court determined that the structure should be evaluated at the situs for purposes of determining whether it remains mobile or is attached to the land. *Id.* at 826–828, 673 N.E.2d at 207–208, citing our opinion in *Sylvester v.*

*Howland Twp.* (1986), 34 Ohio App.3d 270, 518 N.E.2d 36 (for zoning purposes, nature of proposed residential structure is to be determined at its situs).

In *LuMac Dev. Corp. v. Buck Point Ltd. Partnership* (1988), 61 Ohio App.3d 558, 573 N.E.2d 681, the court determined that the ordinary meanings of "house trailer" and "manufactured home" were the same. This determination was based upon an analysis of the definitions contained in R.C. 4501.01. The court noted that the previous R.C. 4501.01(I) defined the term "house trailer," but that the current version of the section does not define that term. Instead, R.C. 4501.01(O) contains a definition of the term "manufactured home," which the court found to encompass the term "house trailer."

However, the reasoning in *LuMac* was rejected by both the *Benner* court and the court in *Moscow v. Skeene* (1989), 65 Ohio App.3d 785, 585 N.E.2d 493. In these opinions the courts determined that the placement of a manufactured home upon a permanent foundation "changed the character of [the] mobile home from one of mobility into a permanent, stationary structure." *Id.* at 789, 585 N.E.2d at 495.

■ Additionally, we note that when the language of a deed restriction is unclear, it must be interpreted in favor of the free use of the land. *Benner*, 109 Ohio App.3d at 826–828, 673 N.E.2d at 207–208.

■ We agree with the reasoning expressed in *Sylvester, Benner* and *Moscow*, and similarly hold that the placement of appellees' manufactured homes upon a permanent foundation transformed them from mobile homes to permanent residences. As a result, the deed restriction against trailers has no application to appellees' residence, and the trial court did not err in so holding.

■ Appellants next contend that the foundation area of the manufactured homes is less than seven hundred twenty square feet, in violation of the third deed restriction. We disagree.

The deed restriction provides:

"There shall not be erected, placed or suffered to remain on any residential lot any building or structure whatever other than one private dwelling house, designed and intended for the occupancy of one family only, with garage or carport appurtenant thereto. All dwellings erected thereon shall either be provided with basements or shall rest on concrete foundations extending below the frost line. All buildings erected thereon shall have a minimum foundation area of 560 square feet if such dwelling is of a story and one-half construction, or higher, or a minimum foundation area of 720 square feet if of one story construction."

This restriction has three requirements: (1) the foundation must be made of concrete, (2) the foundation must extend below the frost line, and (3) the

"foundation area" for a one-story building must be at least 720 square feet. There is no dispute that appellees' foundation is made of concrete and that it extends below the frost line. The foundation is a set of six concrete joists resting on concrete piers that extend some 36 inches into the ground. The dispute arises over the interpretation of the minimum foundation area requirement.

Appellants interpret the phrase "foundation area" to mean the area of solid surface of physical material acting as the foundation, or actually bearing the weight of the house. Appellants argue that appellees' foundation joists, three of which are 36 feet long and 18 inches wide, the other three of which are 23 feet long and 18 inches wide, aggregate to a total load-bearing surface area of only 265.5 square feet, which is far less than the 720 square feet required by the deed restriction.

The trial court rejected this interpretation. It applied the reasoning to another type of foundation system, called a perimeter wall foundation, and determined that the results would be absurd. A perimeter wall foundation is composed of concrete blocks. A standard concrete block is 8 inches wide and 16 inches long. If one assumed that the entire surface of the concrete block actually bore the weight of the building,[1] each block would provide only .88 square feet of load-bearing surface. In order to generate 720 square feet of load-bearing surface, one would need to string 818 concrete blocks in a row 1,091 feet long. If that row of blocks were split into four equal lengths, and reassembled into a square as if supporting the four walls of a house, the resulting square would measure 272.75 feet on a side. A square house measuring 272.75 feet on a side would have 74,392.56 square feet of floor space. In comparison, a standard football field, which is 100 yards long by 53⅓ yards wide, or 300 feet long by 160 feet wide, measures only 48,000 square feet. Under appellants' interpretation, a landowner seeking to lay a perimeter wall foundation system would need to construct a house nearly twice the size of a football field.

However, appellants' interpretation of the deed restriction does not preclude all types of foundation systems. If the landowner chose instead to lay a structurally integrated ground slab, then the entire weight of the house would be transferred down the perimeter and interior load-bearing walls and eventually distributed throughout the entire surface of the slab. Because ground slabs are typically reinforced at the perimeter by a series of concrete pillars that extend below the frost line, this foundation system would fulfill all three requirements of the deed restriction. A house resting on a ground slab that measures 720 square feet

---

1. Actually, the concrete blocks are stacked on their sides, so that the weight of the structure above is carried only by a surface that is in the shape of a Roman numeral three (III). Thus, the actual load-bearing surface is much smaller than .88 square feet. However, the trial court assumed that the blocks were solid for the purposes of the analysis, and we adhere to that assumption in reviewing its analysis.

would only measure about 30 feet long by 24 feet wide. Such a residence would be quite modest. A basement wall foundation system with a structurally integrated floor slab would also meet the three requirements of the deed restriction as appellant construes them. It is plausible that the drafter of the deed restriction intended to implicitly require certain types of foundations and to exclude others. Thus, we do not summarily reject appellant's interpretation, as did the trial court.

On the other hand, there is an equally plausible interpretation of the 720 square foot foundation area requirement that would permit appellees to place their manufactured home on their lot. It is fundamental that, in applying land-use restrictions written into a plat or deed, courts are to construe the language used in accordance with the intent of the parties. *Dean v. Nugent Canal Yacht Club, Inc.* (1990), 66 Ohio App.3d 471, 475, 585 N.E.2d 554, 556–557. When read in this light, the 720 square-foot requirement probably was not intended to require a minimum amount of load-bearing concrete in the foundation system.

Minimum square footage requirements are typically used to ensure comparable value of new construction within an allotment. This practice is grounded on the theory that similarly sized houses, located in the same area, will bear similar market values, and serves to protect those values over time in ways other methods might not. Hence, the 560 square foot minimum for structures of one and one half story and above and the 720 square-foot minimum for one-story structures appear in the 1955 plat.

Houses built in different years but in compliance with the same square footage restriction are more likely to have similar market values than those complying with a minimum construction cost restriction. Inflation will depreciate the value set by a restriction based upon a minimum cost of construction, but not one requiring a square foot minimum. This 1955 restriction, requiring that all new houses built in the allotment exceed a minimum size, ensures that such houses will exceed a minimum value. This, in turn, protects the value of all the properties in the area. As construction costs increase, the values of the houses should maintain an equivalency. Requiring a landowner to exceed the minimum size for a new house built in 1995 guarantees that new construction will not diminish surrounding property values.

Thus, it is rational to interpret the 720 square-foot foundation area requirement in light of the drafter's intent to preserve property values as requiring one-story houses to have more than 720 square feet of floor space. As appellees' manufactured home boasts 1,794 square feet, it easily passes muster under this interpretation of the deed restriction.

In short, there are two competing interpretations of the minimum foundation area restriction. Under appellants' interpretation, appellees' pier system founda-

tion falls short of the required load-bearing surface. Under the other, the size of appellees' home easily exceeds the minimum.

■ In situations like the one at bar, where the language of a restriction on real property is susceptible of two or more possible constructions, courts are to liberally construe the restriction in favor of the proposed land use. *Houk v. Ross* (1973), 34 Ohio St.2d 77, 90, 63 O.O.2d 119, 126, 296 N.E.2d 266, 274–275; *Frederick v. Hay* (1922), 104 Ohio St. 292, 135 N.E. 535, at the syllabus. Accordingly, we hold that the phrase "foundation area" in the deed restriction requires newly constructed houses to exceed a minimum size. Because the floor plan of appellees' manufactured home exceeds the 720 square-foot minimum, the trial court did not err in granting them summary judgment and in denying appellants' cross-motion for summary judgment.

This opinion merely affirms appellees' compliance with the deed restrictions imposed on their land. It does not preclude the exclusion of house trailers, mobile homes, manufactured homes, pre-engineered homes, or any other form of construction by properly drafted restrictions designed to effectuate that purpose. As written, these restrictions simply do not preclude appellees' manufactured home, and, for this reason, appellants' assignment of error is meritless.

For all of the foregoing reasons, we affirm the judgment of the trial court.

*Judgment affirmed.*

FORD, P.J., and CHRISTLEY, J., concur.