This matter comes to us from the Common Pleas Court of Miami County, General Division. Defendant-Appellant Dorthea Davis appeals from a declaratory judgment rendered in favor of plaintiffs-appellees Paul E. Dunlavy and Joan Dunlavy. We agree with Davis that a restrictive covenant bars the erection of a storage shed on the Dunlavy's property. Accordingly, the judgment of the trial court is Reversed, and judgment is rendered in favor of Davis.
 I.
This case concerns whether restrictive covenants in a subdivision plat prohibit the building of a shed. In the summer of 1996, the Dunlavys announced their intention to build a storage shed on their property. When they did so, they encountered resistance from Davis, who owns the lot next door to the Dunlavys. Davis informed the Dunlavys of her belief that their erection of a shed was prohibited under two restrictive covenants in the neighborhood's subdivision plat. In particular, Davis contended that their building of a shed was absolutely prohibited under the following restrictive covenant:
 1. No lot shall be used except for residential purposes. No building shall be erected, altered, placed, or permitted to remain on any lot other than one single family dwelling.
In the alternative, Davis argued that, at minimum, the Dunlavy's proposed building site was prohibited under the following restrictive covenant:
 3. No building shall be located on any lot nearer to the front or side property line than the building set back line as provided on the recorded plat.
All of the lots were marked with a twenty-five foot front set back line on the subdivision plat. Using this twenty-five foot front set back line, Davis read restrictive covenant number three as creating side set back lines by prohibiting buildings from being erected any nearer to the side of the lot owners' properties than that front set back line expressly demarcated on the subdivision plat. Applying that reasoning to her case, Ms. Davis argued that the Dunlavys' proposed building site had to be at least twenty-five feet away the side of her property. Given that their proposed building site was less than twenty-five feet from her property line, she argued that their proposed site was prohibited by restrictive covenant number three.
In view of Davis's resistance to their proposed shed, the Dunlavys brought a declaratory judgment action seeking the court to determine whether these restrictive covenants prohibit the construction and/or the location of the proposed shed. On April 7, 1997, the trial court granted declared judgment in favor of the Dunlavys. The trial court found that restrictive covenant number one was ambiguous when read in concert with restrictive covenant number four, which provides that:
 4. No trailer, basement, garage, barn or other outbuilding or structure shall be used as a residence. No temporary structure shall be permitted on any lot except during the active period of construction.
The court reasoned that if one is to give meaning to this covenant's prohibition against using such buildings as a residence one must find by implication that such buildings are permitted. Given that restrictive covenant number one seems to be an absolute prohibition against any other buildings than one single family residence and that restrictive covenant number four seems by implication to permit other buildings, the court found the covenants to be ambiguous. Finding an ambiguity, the court acknowledged the law's disfavor of restrictions on the free use of land and interpreted the ambiguity in favor of the Dunlavys.
The court also found that restrictive covenant three does not prohibit the building of the shed within twenty-five feet of the side or rear of the Dunlavy's property line. The court discerned that the express language of restrictive covenant number three did not create side set back restrictions. The court based its decision on the fact that several lots had explicit side set back lines on the subdivision plat and the language of restrictive covenant number three which restricted the covenant's application to the set back lines already "provided on the recorded plat." The court further explained that while some properties on the subdivision plat had explicit side set back lines, there were no side (or rear) set back lines present on Dunlavys' property. Therefore, the court concluded that the Dunlavys' proposed building site could not be prohibited under restrictive covenant number three. Davis does not appeal from the trial court's decision as to the side and rear set back lines. Rather, her appeal solely concerns the trial court's decision that restrictive covenant one is ambiguous in light of restrictive covenant four.
 II. Assignment of Error THE TRIAL COURT ERRED IN INVALIDATING THE CLEAR PROHIBITION CONTAINED IN PROTECTIVE COVENANT NUMBER 1 UPON THE BASIS OF A PERCEIVED "AMBIGUITY" CREATED BY AN "IMPLICATION" GLEANED FROM THE LANGUAGE OF COVENANT NUMBER 4.
Davis argues that the trial court erred in finding that the restrictive covenants are ambiguous. In particular, Davis argues that restrictive covenant number one is unambiguous because its language is clear and unequivocal in prohibiting the erection ofany building other than a single family dwelling. She further claims that this clear and unequivocal language prohibits the erection of a storage shed because case law has defined a storage shed as a building.
Davis further argues that restrictive covenant number four can be read in a manner that does not conflict with restrictive covenant number one and render it ambiguous. Specifically, Davis posits that restrictive covenant number four can be read as supplementing restrictive covenant number one by elucidating what type of building can constitute a single family residence. Thus, she reads restrictive covenant number one as prohibiting the construction of any building on the lot other than a single family residence, and restrictive covenant number four as listing the types of structures that cannot constitute a single family residence.
As support for her argument, she brings our attention to an Alabama Supreme Court case, Spygley v. Miller (1978),356 So.2d 644. The restrictive covenants in that case provided that:
 "No lot shall be used except for residential purposes. No building shall be erected, altered, or placed or permitted to remain on any lot other than one detached single family dwelling not to exceed two and a half stories in height, and a private garage for no more than three cars."
 "No structures of a temporary character, trailer, tent, shack, garage, barn or other out building shall be used on any lot at any time as a residence, either temporary or permanent."
The Plaintiff-Appellants in Spygley argued, like the Dunlavys, that there was a
 "grammatical inconsistency between two provisions. It is submitted that the covenant which deals with land use and building type is inconsistent with the covenant which deals with temporary structures * * * the inclusion of the covenant dealing with temporary structures not only indicates but proves beyond question that the covenants as a whole contemplate the use of temporary structures. Otherwise, it would be unnecessary to restrict the use of those structures to prohibit their use as a residence either temporarily or permanently."
Id. at 645.
The Spygley court disagreed with the plaintiff-appellants. The court stated that "[w]here the language of the restriction is clear and unambiguous it will, of course, be given its manifest meaning * * *.'" Id. The court went on to explain that
 "[t]hough ingenious in its concept, reference to the "Temporary Structures" paragraph, as a means of invoking the rule of strict construction against such covenants, does not render the restrictive language less clear nor impugn with doubt its manifest intent. The "Land Use and Building Type" covenant, in clear and unambiguous terms, prohibits the use of any building on the subject lot other than one detached family dwelling and a private garage."
Id. (Emphasis included). Finding the language of the "Land Use and Building Type" covenant unambiguous, the court declined to extend its construction by means of an implication derived from the "Temporary Structures" provision.
The court further explained that it found the provisions to have separate purposes or "fields of operation." The court attempted to explain what it found to be the purpose of the "Temporary Structures" provision by means of a hypothetical. In this court's view, the meaning to be gleaned from the Spygley
court's hypothetical is unclear. In our best estimation, the court intended the hypothetical to convey that the purpose of the "Temporary Structures" provision was to prohibit the use of any of the listed structures as the lot owner's single family residence. Thus, we read the court's decision as finding that the "Temporary Structures" covenant in that case could be interpreted consistently with the first covenant by construing the first covenant as prohibiting the erection of any buildings other than a single family residence and the "Temporary Structures" covenant as listing the types of buildings that cannot constitute the one single family residence permitted under the first covenant.
Before we consider the restrictive covenants in the case before us, we must first visit the rules of construction. The rules of construction for restrictive covenants are founded on the principle that restrictions on the free use of land are disfavored. Benner v. Hammond (1996), 109 Ohio App.3d 822,673 N.E.2d 205, stay denied 75 Ohio St.3d 482, 664 N.E.2d 535, appealnot allowed 77 Ohio St.3d 1479, 673 N.E.2d 141. Consequently, where a covenant's language is indefinite, doubtful, and capable of contradictory interpretations, courts are to construe the covenant in favor of the free use of land. Id. However, even though restrictions on the free use of land are disfavored, such restrictions are not impossible. Courts are to enforce a restriction where it is clearly and unambiguously found in a covenant. Id.
This court addressed a nearly identical issue in Mays v.Noble (July 6, 1987), Montgomery App. No. 10330, unreported. InNoble, we determined that two similar covenants in a subdivision plat were ambiguous. Those covenants provided:
 All lots in this plot shall be known and described as residential lots. No structure shall be erected, altered, placed, or permitted to remain on any residential lot other than one detached single family dwelling not to exceed two stories in height and a private garage for not more than three cars.
 No trailer, tent, shack, garage, barn, or other out-buildings erected in the subdivision shall at any time be used as a residence temporarily or permanently, nor shall any structure of a temporary nature be used as a residence.
Id. at 3. We found that the covenants were ambiguous because the first covenant seemed to prohibit all structures except one single family dwelling while the latter covenant appeared to acknowledge by implication that such structures were permitted, but could not be used for residential purposes. Finding an ambiguity, we interpreted the covenants in favor of the property owner's free use of his land.
Although we agree with the Dunlavys that Mays v. Noble is not materially distinguishable, we decline to follow our holding in that case. We agree with Davis that restrictive covenant number one is unambiguous. Restrictive covenant number one provides without exception that "No building shall be erected * * * other than one single family dwelling." It is undisputed that a shed constitutes a building under the law. Thus, under a plain reading of restrictive covenant number one, sheds are prohibited from being erected in the subdivision.
Furthermore, restrictive covenant number four does not contradict the prohibition in covenant number one. Restrictive covenant number four provides that "No trailer, basement, gargage, barn, or other outbuilding or structure shall be used as a residence." A plain reading of this covenant is that the listed structures may not be used as a residence. This does not contradict restrictive covenant one; rather it limits what types of buildings may constitute a single family residence. Any implication that these structures are permitted is negated by the unequivocal language found in restrictive covenant number one.
Davis's sole assignment of error is sustained.
 III
Davis's sole assignment of error having been sustained, the judgment of the trial court is Reversed, and a declaratory judgment is rendered, as a matter of law, in Davis's favor.
GRADY, J., concurs.