DECISION.
The parties in this action are lot owners in the Hickory Hill subdivision.[1] When the subdivision was first built, it was not served by a public water line. In 1997, the lot owners, through the Hickory Hill Owners Association, began the application process for the installation of public water from the Hamilton County Department of Public Works. Eventually, the subdivision was successful, and the Hamilton County Board of Commissioners approved the installation of the water line throughout the neighborhood.
The board determined that individual lot owners would be billed according to the frontage of their respective lots along Hickory Creek Drive. The subdivision contained a number of panhandle lots, which had minimal driveway-width frontage on Hickory Creek Drive because the main portion of each lot sat behind another lot having greater frontage on the road. As a result, the owners of panhandle lots were to be billed considerably less for the cost of the water line than those owners of lots that had substantial frontage on Hickory Creek Drive.
The Hallers filed this declaratory-judgment action to challenge the allocation of the costs of the water line. The Hallers argued that the water line was an "improvement" under Provision 15 of the subdivision's deed restrictions, and that, therefore, the total cost of the water line should have been divided equally among the lot owners, regardless of the county's method of allocation.
The Hallers and the defendants-appellees filed motions for summary judgment. The trial court granted summary judgment in favor of the defendants-appellees, ruling that "a water line cannot and does not fall within [Provision 15], and therefore, cannot be shared equally."
In a single assignment of error, the Hallers argue that the trial court erred by granting summary judgment in favor of the defendants-appellees. We agree and reverse the trial court's judgment.
Because summary judgment presents only questions of law, an appellate court independently reviews the entry of summary judgment de novo.[2]
To prevail on a motion for summary judgment, the moving party "must identify those portions of the record that demonstrate an absence of a genuine issue of material fact."[3]
To uphold the entry of summary judgment under Civ.R. 56(C), a reviewing court must determine that "(1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing the evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party."[4]
The rules of construction for restrictive covenants are informed by the principle that restrictions on the free use of land are disfavored.[5]
As a result, when a covenant's language is indefinite, doubtful, and capable of contradictory interpretations, a court must construe the covenant in favor of the free use of land.[6] But if the language in a restrictive covenant is clear and unambiguous, the court must enforce the restriction.[7] Where the lot owner has notice of such a restriction and it is properly part of a general plan or scheme, the restriction is enforceable.[8]
The goal of interpreting the language of a restrictive covenant is to determine the intent of the parties as reflected by the language used in the restriction.[9] The words used in the restriction must be given their common and ordinary meaning.[10]
To support their claim that the costs of the water line should have been divided equally among the lot owners, the Hallers relied on Provision 15 of the subdivision's deed restrictions, which provided as follows:
 All homesite and homeowners shall become members of the Hickory Hill Owners Association and abide by all of its rules and regulations and share equally in the cost of maintenance, snow removal, restoration, and improvements. Street lighting costs, if any, shall be prorated among all owners. Private road maintenance agreements are not included in these restrictions and are separate agreements. [Emphasis added.]
 The defendants-appellees, however, relied on another deed restriction entitled "Services Charges, Assessments and Fees," which provided as follows:
 The owners of all properties shown on this record plat shall be subject to all applicable sewer service charges, assessments, tap-in charge or fees, which have been or may be established by the Board of County Commissioners.
 The parties agreed that each of the lot owners had notice of the deed restrictions at issue. Our review of the language of both restrictions makes clear that the installation of a water line falls within the purview of Provision 15 of the subdivision's deed restrictions. The common and ordinary definition of the term "improvement" convinces us that the term encompasses the installation of a water line.
This court has held that a trial court's adoption of definitions for the terms "improvement," "alteration," and "maintenance" was reasonable where the trial court had found that "an alteration or improvement involves the change of a thing from one form or state to another, whereas maintenance contemplates the restoration of a thing to its original condition."[11] Here, obviously, the installation of a new water line, where none had existed previously, was an improvement, as that term is ordinarily used.
The installation of a new water line is commonly referred to as an "improvement."[12] In this case, the water-line installation was governed by R.C. 6103.01 et seq. Under R.C. 6103.01(A), the definition of an "improvement" includes, inter alia, water mains. Certainly, the term "improvement" in the deed restrictions here contemplated such an installation for the subdivision.
Therefore, we hold that the trial court erred in granting summary judgment to defendants-appellees. We sustain the Hallers' assignment of error, reverse the judgment of the trial court, and remand the matter for further proceedings consistent with law and this decision.
Judgment reversed and cause remanded.
Doan, P.J., and Hildebrandt, J., concur.
[1] PNC Bank represents the estate of Beverly Carpenter, an owner of property in Hickory Hill.
[2] See Polen v. Baker (2001), 92 Ohio St.3d 563, 564-565,752 N.E.2d 258, 260.
[3] Dresher v. Burt (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264,274; see, also, Civ.R. 56(C).
[4] Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105,671 N.E.2d 241, 245, citing State ex rel. Cassels v. Dayton City SchoolDist. Bd. of Edn. (1994), 69 Ohio St.3d 217, 219, 631 N.E.2d 150,152.
[5] See Benner v. Hammond (1996), 109 Ohio App.3d 822, 826,673 N.E.2d 205, 207-208.
[6] See id.
[7] See Ormond v. Rollingbrook Estates Homeowners Assn. (Dec. 7, 2000), Cuyahoga App. No. 76482, unreported, appeal not allowed (2001),91 Ohio St.3d 1513, 746 N.E.2d 615; Brooks v. Orshoski (1998),129 Ohio App.3d 386, 717 N.E.2d 1137.
[8] See Paterniti v. Zuber (Nov. 20, 1997), Cuyahoga App. No. 71817, unreported, citing Woodstream Dev. Co. v. Payak (1994), 93 Ohio App.3d 25,27, 637 N.E.2d 391.
[9] See Hitz v. Flower (1922), 104 Ohio St. 47, 57, 135 N.E. 450,453; Woodcreek Association, Inc. v. Bingle (1991), 73 Ohio App.3d 506,508, 597 N.E.2d 1153, 1155.
[10] See Arnoff v. Chase (1920), 101 Ohio St. 331, 128 N.E. 319;Benner v. Hammond, supra.
[11] Behm v. Victory Lane Unit Owners' Assn., Inc. (1999),133 Ohio App.3d 484, 728 N.E.2d 1093
[12] See, e.g., Smith v. Avon (Nov. 22, 2000), Cuyahoga App. No. 99CA007319, unreported; C.I.V.I.C. Group v. Warren (2000),88 Ohio St.3d 37, 723 N.E.2d 106; Schiff v. Columbus (1967),9 Ohio St.2d 31, 223 N.E.2d 54; Alf v. Flick (1962), 1 Ohio Misc. 17,204 N.E.2d 418 (property that is improved by the addition of a public water line that services private property, where no such service previously existed, constitutes a special benefit to the land); see, also, R.C. 6103.01 et seq.