DECISION AND JOURNAL ENTRY
{¶ 1} Appellants/cross-appellees High Hampton Development Limited Partnership, High Hampton Development, Inc., and David R. Shepherd (collectively "Developers") and Appellees/cross-appellants Elias and Gloria Karam, Jerome and Michelle Linnen, and Todd and Annette Bischof, (collectively "Homeowners") have each appealed from the August 22, 2002 judgment of the Summit County Court of Common Pleas. We affirm.
 {¶ 2} In a consolidated action, Homeowners sought a writ of mandamus against the City of Akron Department of Planning and Urban Development ("City Planning Department") and the Summit County Auditor's Office, Recording Division ("County Recording Division"), seeking an order compelling the governmental entities to withdraw approval of the quit claim deed and strike the deed from the records of the county. The Homeowners also sought enforcement of Akron City Code Section 151.17, the open space requirement. The trial court denied the writ on all counts. Nevertheless, the City has challenged the trial court's ruling in regard to the open space requirement.
 I. {¶ 3} High Hampton is a residential development in the City of Akron, created by High Hampton Development, Inc. ("HH Inc.") and High Hampton Development Limited Partnership ("HHLP"). HH Inc. is the general partner of HHLP. HHLP has two limited partners, which are family trusts created for the benefit of the Shepherd family. Mr. Shepherd is the president and sole shareholder of HH Inc.
 {¶ 4} Homeowners are the owners of adjacent lots in Phase Four of the High Hampton development. Karams purchased 2646 Deer Ridge Run, Lot No. 114, in August 1994; Linnens purchased 2642 Deer Ridge Run, Lot. No. 113, in May 1995; and Bishofs purchased 2650 Deer Ridge Run, Lot No. 115, in July 1995. Homeowners subsequently moved into homes on their respective properties.
 {¶ 5} The development was platted and approved in phases by the City of Akron and is subject to certain Restrictions and Covenants ("Deed Restrictions") which were recorded with the plat for each phase in the Summit County Records.
 {¶ 6} In November, 1997, Developers determined to make changes to a portion of High Hampton. Developers reconfigured five unsold lots, 24, 25, 63, 64, and 65, into eight lots and provided for a driveway easement and utility right-of-way on a portion of those lots.
 {¶ 7} The property involved in the reconfiguration[1] was conveyed from HHLP and HH Inc. to HHLP by quit claim deed, executed on December 12, 1997 and recorded approximately one year later, on December 17, 1998. Mr. Shepherd signed as representative of both HH Inc. and HHLP.
 {¶ 8} Developers submitted a new site plan, reflecting these changes, to the City Planning Department for approval as a minor subdivision. The reconfiguration was approved by John Moore, Zoning Administrator, as a minor subdivision with conveyance of the new parcels by quit claim deed, on January 6, 1998. He indicated that the reconfiguration was approved by the City Planning Commission and "No plat required."
 {¶ 9} In June 1998, Developers began to grade, level and rough-in a road bed, apparently for the driveway, and install utility improvements, which would extend to the newly created home sites. A first layer of asphalt was put down in December 1998.
 {¶ 10} On December 29, 1998, Homeowners filed a complaint for injunctive and other relief. Homeowners sought to enjoin Developers from constructing the driveway, from conveying the subject property to third-party purchasers, and to require Developers to proceed with the development in accordance with the Deed Restrictions and the recorded plat. Homeowners claim the actions by Developers have been taken in violation of the Deed Restrictions as well as R.C. Chapter 711 and local regulations governing subdivisions. Developers answered and counterclaimed.
 {¶ 11} On motion of Homeowners, the case was consolidated with CV 99 01 0141, Homeowners' administrative appeal to the Court of Common Pleas from a decision of the City Planning Department, and CV 99 01 0142, Homeowners' complaint in mandamus against the City Planning Department and the County Auditor's Office.
 {¶ 12} Pursuant to motion and following a hearing, the trial court granted a preliminary injunction on February 4, 1999, enjoining Developers from conveying property or proceeding with the construction or installation of improvements in the subject area.
 {¶ 13} Thereafter, Developers, Homeowners, and the City Planning Department each filed motions for summary judgment. On August 22, 2002, the trial court entered judgment, finding that R.C. Chapter 711 did not afford Homeowners a basis for injunctive relief in this matter, but that the Deed Restrictions did. Accordingly, the trial court ordered Developers to proceed with the development in accordance with the Deed Restrictions set forth in the recorded plat and to remove any part of the driveway and related construction that had already been completed. The remaining counts of the Homeowners' central complaint and Developers' counterclaim were resolved as moot, explicitly or implicitly determined, or voluntarily dismissed.
 {¶ 14} As to Homeowners' complaint in mandamus regarding the governmental entities, the trial court specifically dismissed the claim against the County Auditor's Department for lack of jurisdiction. The trial court found that Homeowners' three R.C. Chapter 711 claims against the City Planning Department were without merit because the court concluded the chapter was not applicable to this case. In addition, although the trial court found that the City Planning Department had a duty to enforce Akron City Code Section 151.17, the open space requirement, the trial court declined to issue the writ and granted judgment to the City of Akron on this count.
 {¶ 15} Homeowners, Developers, and the City Planning Department have appealed. The appeals have been consolidated for proceedings in this Court. We consider Developers' five assignments of error first because we find them to be dispositive.
 II. Developers' First Assignment of Error
"The Trial Court Erred In Permanently Enjoining [Developers] From Reconfiguring Their Property."
 Developers' Second Assignment of Error
"The Trial Court Erred In Requiring [Developers] To Remove A Paved Driveway That Was Installed At Substantial Cost Pursuant To Valid Easements."
 Developers' Third Assignment of Error
"The Trial Court Erred In Granting [Homeowners] An Injunction When [Homeowners] Had An Adequate Remedy At Law For Any Alleged Damages."
 Developers' Fourth Assignment of Error
"The Trial Court Erred In Granting A Permanent Injunction As A Matter Of Law When Factual Issues Remained Concerning [Developers'] Equitable Defenses Of Laches."
 Developers' Fifth Assignment of Error
"The Trial Court Erred In Granting An Injunction As A Matter Of Law When [Homeowners] Failed To Establish, By Clear And Convincing Evidence, The Irreparable Injury And Comparative Detriment Needed To Sustain An Injunction. At The Very Least, Factual Issues Exist, Requiring Trial."
 {¶ 16} Through their five assignments of error, Developers challenge the decision of the trial court, granting summary judgment to Homeowners and issuing a permanent injunction. Specifically, Developers (1) challenge the trial court's interpretation of the Deed Restrictions; (2) claim the trial court erred in requiring Developers to remove the paved driveway; (3) claim Homeowners had an adequate remedy at law for any alleged damages; (4) maintain that there are factual issues remaining regarding Developers' asserted defense of laches; and (5) claim Homeowners failed to establish irreparable injury and comparative detriment.
 {¶ 17} This case is before us on cross-motions for summary judgment. Appellate review of summary judgment is de novo. Helton v.Scioto Cty. Bd. of Commrs. (1997), 123 Ohio App.3d 158, 162. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex. rel. Grady v. State Emp. Relations Bd.
(1997), 78 Ohio St.3d 181, 183.
 {¶ 18} The standard of review regarding the granting of an injunction by a trial court is whether the trial court abused its discretion. Perkins v. Village of Quaker City (1956), 165 Ohio St. 120,125.
"Injunction is an extraordinary remedy equitable in nature, and its issuance may not be demanded as a matter of strict right; the allowance of an injunction rests in the sound discretion of the court and depends on the facts and circumstances surrounding the particular case * * *." Id., at syllabus.
"The term `abuse of discretion' connotes more that an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. Absent such a showing, this Court cannot reverse.
 {¶ 19} We first consider whether the Deed Restrictions permit Developers to reconfigure five home sites into eight. We find that they do not.
 {¶ 20} The construction of written instruments, including deeds is a matter of law. Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, paragraph one of the syllabus. Questions of law are determined de novo. Graham v. Drydock Coal Co. (1996), 76 Ohio St.3d 311,313, quoting Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm (1995),73 Ohio St.3d 107, 108.
 {¶ 21} The rules of construction applicable to restrictive covenants are well established. Generally, restrictions on the free use of land are disfavored. Driscoll v. Austintown Assoc. (1975),42 Ohio St.2d 263, 276-77; Benner v. Hammond (1996), 109 Ohio App.3d 822,827. If the covenant's language is indefinite, doubtful, and capable of contradictory interpretations, the court must construe the covenant in favor of the free use of land. Houk v. Ross (1973), 34 Ohio St.2d 77, paragraph two of the syllabus. However, where the language in a restriction is clear, a court must enforce the restriction. Dean v.Nugent Canal Yacht Club, Inc. (1990), 66 Ohio App.3d 471, 475.
 {¶ 22} The goal of interpreting the language of a restrictive covenant is to determine the intent of the parties as reflected by the language used in the restriction. Hitz v. Flower (1922), 104 Ohio St. 47,57. Courts must give words used in a restrictive covenant their common and ordinary meaning. Arnoff v. Chase (1920), 101 Ohio St. 331, 334;Devendorf v. Akbar Petroleum Corp. (1989), 62 Ohio App.3d 842, 845. In addition, courts must read the restrictive covenants as a whole. LuMacDev.Corp. v. Buck Point Ltd. Partnership (1988), 61 Ohio App.3d 558,563.
 {¶ 23} This case requires us to consider the meaning of the first subparagraph of the Deed Restrictions for each relevant phase of the development. Those subparagraphs state as follows:
"Lots #1 through #44 shall be used exclusively for single family residence purposes, and only one such residence shall be permitted on each lot." (Restrictions and Covenants for Phase One)
"Lots #45 through #82 shall be used exclusively for single family residence purposes, and only one such residence shall be permitted on each lot." (Restrictions and Covenants for Phase Two/Phase One Replat)
"Lots #100 through #116 shall be used exclusively for single family residence purposes, and only one such residence shall be permitted on each lot." (Restrictions and Covenants for Phase Four)
 {¶ 24} Homeowners assert that the above restrictions clearly and unambiguously refer to each lot in High Hampton and permit only one single-family residence per lot. Homeowners argue that under the reconfiguration, two residences would be built on one lot and three residences on another. Homeowners assert that the original plat calls for a maximum of 131 single-family residences in all phases. Accordingly, Homeowners argue that there can be no more than 131 homes unless this restriction is modified.
 {¶ 25} Developers, on the other hand, assert that while the Deed Restrictions permit only one residence per lot, the Deed Restrictions also contemplate further lot divisions. Developers rely on Paragraph 3 under "Additional Restrictions" which states as follows:
"No lot in this subdivision shall be subdivided or divided, unless or until the plat showing such proposed subdivision or division shall have been submitted to the Developer or the Board of Managers and the written consent of said has been obtained."
Developers claim that this provision means that once a lot is divided or subdivided, new lots are created and each may contain a single family home.
 {¶ 26} In our judgment, the Deed Restrictions in this matter are not ambiguous and support the trial court's determination. The Deed Restrictions indicate not just that only one single family residence may be built upon each lot, but also refer to each lot in the development by number. In so doing, the Deed Restrictions establish that only one residence shall be built on Lot #1, only one residence shall be built on Lot #2, and so on. The Deed Restrictions, therefore, establish a maximum number of 131 homes for the development.
 {¶ 27} The provision regarding division and subdivision of lots must be read together with the provision that prohibits more than one residence from being built on each lot. When so read, it is clear that a lot can be subdivided as long as there is no increase in the number of homes. Indeed, such lot splits have taken place in this development. A single lot has been divided between two adjacent lots, with no increase in the number of home sites or overall density. Therefore, the two referenced clauses may be read together and convey no ambiguity.
 {¶ 28} Such an understanding is consistent with other portions of the Deed Restrictions. The preamble provides that the "restrictions, covenants, easements and limitations upon the land" are intended to preserve the "values, aesthetic harmony and amenities of said community." Adopting the construction advocated by Developers would defeat the purpose of the Deed Restrictions.
 {¶ 29} Furthermore, the Deed Restrictions as drafted by the Developers provide that Developers could have attempted to modify the restrictions by obtaining the signatures of a majority of the property owners stating their agreement with the amendment. In this case, Developers did not pursue this method. Indeed, Mr. Shepherd testified that he and his wife were the only lot owners to express agreement with the modification.
 {¶ 30} The trial court did not err in granting summary judgment upon its interpretation of the Deed Restrictions; nor did it abuse its discretion in issuing a permanent injunction against implementation of Developers' reconfiguration insofar as it conflicts with the Deed Restrictions and the original plat.
 {¶ 31} Second, Developers claim the trial court erred in requiring them to remove a paved driveway. Developers claim that they should not be required to remove any portion of the driveway, and, in particular, they should be permitted to retain the portion which was included in the original plat. Homeowners have not sought the removal of the original portion of the access drive.
 {¶ 32} The trial court specifically ordered Developers to "proceed with the development consistent with the Restrictions as set forth in the recorded plat." In ordering the removal of "any part of the road and related construction that has already been completed," we conclude that the trial court was referring to the portion of road which is an extension of and inconsistent with the original recorded plat and affirm the judgment as such.
 {¶ 33} We next consider the portion of the driveway which was not included in the original plat. We note that the Deed Restrictions reserve a right to the Developers or owners to petition for or relocate utility easements in accordance with governmental requirements. But the availability of necessary and proper utility easements does not sanction the construction of a 16-foot wide access driveway with streetlights.
 {¶ 34} Furthermore, the Deed Restrictions indicate that the subject lots, which are part of Phases One and Two, "shall be usedexclusively for single family residence purposes." (Emphasis added.) To the extent that Developers are instead attempting to utilize a portion of those lots for an access driveway to areas that cannot exist as separate home sites, they are in violation of the Deed Restrictions. Accordingly, the access driveway which is not included in the original plat is prohibited by the Deed Restrictions. The trial court did not err in requiring it to be removed.
 {¶ 35} Third, Developers claim Homeowners had an adequate remedy at law for any alleged damages. Although it may be possible to compute the decrease in value of Homeowners' property, the loss of privacy, safety, and enjoyment of their property would be difficult, if not impossible to compensate in monetary terms.
 {¶ 36} Homeowners testified that they purchased their lots at a price premium as compared to lots across the street, because of the rural and natural view from the back of their lots. The Linnens stated they specifically designed their home to take advantage of the rural, natural view from their lot, which was being replaced with a view of a road and streetlights. Homeowners testified to traffic and safety concerns for their small children due to the proposed 16-foot wide driveway within 30 feet of the rear boundary line of their property. The intangible nature of these injuries makes damages impossible to calculate. See Jaussen v.Fleming (May 12, 1995), 11th Dist. No. 93-T-4973, citing BasicomputerCorp. v. Scott, (C.A. 6, 1992), 973 F.2d 507, 511. As there was no adequate remedy at law, the trial court did not abuse its discretion by granting injunctive relief.
 {¶ 37} Fourth, Developers maintain that there are factual issues remaining regarding Developers' asserted defense of laches. An examination of the facts surrounding this defense reveals Developers' failure to create any material factual dispute on this point.
 {¶ 38} Laches is an equitable defense whose elements are: (1) unreasonable delay or lapse of time in asserting a right; (2) absence of an excuse for such delay; (3) knowledge, actual or constructive, of the injury or wrong; and (4) prejudice to the other party. State ex rel.Cater v. N. Olmsted (1994), 69 Ohio St.3d 315, 325. Thus, in order for Developers to prevail on this point and overcome the trial court's grant of summary judgment, Developers must first establish that there exists at least a genuine issue of material fact as to whether Homeowners unreasonably delayed in asserting their claim.
 {¶ 39} Homeowners initiated this action by a complaint filed on December 29, 1998. Significantly, there is no evidence that any home construction pursuant to the reconfiguration at all had begun by that time. Developers had begun grading for the driveway in June 1998 and only subpaved the access driveway in December 1998.
 {¶ 40} Developers apparently either chose not to approach the lot owners directly or failed in their attempt to obtain majority agreement to amend the Deed Restrictions. Instead, Developers attempted to circumvent the Deed Restrictions by conveying the property by quit claim deed and pursuing an abbreviated procedure before the City Planning Department. Developers gave no notice to Homeowners or other lot owners regarding the pendency of this procedure. The quit claim deed was recorded only twelve days before Homeowners filed their action.
 {¶ 41} Upon review of this record, we conclude that Developers have failed to establish Homeowners unreasonably delayed in bringing this action and have similarly failed to create a genuine factual dispute in that regard. There is no evidence upon which reasonable minds could conclude that Homeowners delayed unreasonably in bringing this action. See Civ.R. 56(C). The argument is overruled.
 {¶ 42} Fifth, Developers claim Homeowners failed to establish irreparable injury and comparative detriment. An essential element of injunctive relief involves a balancing process designed to weigh the equities between the parties. Rite Aid of Ohio, Inc. v. Marc's VarietyStore, Inc. (1994), 93 Ohio App.3d 407, 418. The moving party must demonstrate that the anticipated injury is not doubtful or speculative, but rather that there exists a reasonable probability of irreparable injury. See Miller v. City of West Carrollton (1993) 91 Ohio App.3d 291,296.
 {¶ 43} In the present case, there was evidence before the trial court that Developers had just begun the process of subpaving an access driveway and installing street lights along it. In addition, Developers had already created a reconfiguration of the subject property through a quit claim deed, recorded the deed, obtained approval for the reconfiguration from the City Planning Department, and placed the reconfigured lots up for sale.
 {¶ 44} These facts establish a reasonable probability that Developers were about to violate the Deed Restriction which permits only one residence on each lot of the High Hampton development.
 {¶ 45} On the other hand, by granting the injunction, Developers are merely returned to the status they had created for themselves through the original recorded plat. The Deed Restrictions were apparently originally drafted to accommodate Mrs. Shepherd's horseback riding and future home sites for children and grandchildren of Mr. and Mrs. Shepherd. In November, 1997, Mr. Shepherd and his wife separated and ultimately obtained a divorce. Mr. Shepherd's efforts to reconfigure the lots began at the same time.
 {¶ 46} The trial court found that the changes created by the construction of the access drive and site preparation were irreparable in nature and that further construction would result in permanent modifications to the land which will impact the Homeowners' adjoining property. The trial judge did not abuse her discretion in so finding. Developers' argument is overruled.
 III. {¶ 47} Developers' five assignments of error are overruled. Because we conclude that the Deed Restrictions support the injunctive relief granted by the trial court and affirm the judgment of the trial court on that basis, Homeowners' seven assignments of error in defense of the judgment are rendered moot and are not addressed. See App.R. 3(C)(2) and App.R. 12(A)(1)(c). Inasmuch as the trial court did not issue the writ of mandamus against the City Planning Department and entered judgment for the City, the City's one assignment of error is also rendered moot and is not addressed. App.R. 12(A)(1)(c). The judgment of the Court of Common Pleas is affirmed.
Judgment affirmed.
CARR, P.J., WHITMORE, J. CONCUR
[1] The reconfiguration included abutting acreage from another corporate entity, Crossings Development Limited Partnership, which was also owned by Mr. Shepherd.