OPINION
{¶ 1} E.G. Lewis is appealing from the decision of the trial court overruling his objections to the magistrate's decision which granted judgment in favor of the defendants, Edward W. Smith and Maria C. Smith, and dismissing his complaint with prejudice, which decision the trial court adopted.
 {¶ 2} The facts and judgment in the case are set forth in the following relevant portions of the magistrate's decision:
 {¶ 3} "On April 6, 2000, Plaintiff E.G. Lewis filed a complaint in the Dayton Municipal Court against Defendants Edward W. Smith and Maria C. Smith (hereinafter `the Defendants') for $12,368.00. On April 17, 2000, the Defendants filed an answer and a counterclaim against the Plaintiff for damages exceeding $70,000. Because the amount of Defendants' counterclaim exceeded the $15,000 monetary jurisdiction of the Dayton Municipal Court, this case was transferred to the Court of Common Pleas on September 27, 2000, in accordance with Civ.R. 3(c). Pursuant to an order of this court dated October 26, 2000, this case was referred to the Magistrate for trial and report on all issues of law and fact pursuant to Civil Rule 53. On January 30, 2001, the Magistrate granted partial summary judgment in favor of the Plaintiff dismissing the Defendant's counterclaim based on the Consumer Sales Practices Act, the Retail Installment Sales Act and the Fair Debt Collection Practices Act. [The Smiths have not cross appealed the dismissal of their counterclaims]. This trial was conducted on February 22, 2001 and concluded on March 5, 2001.
 "I. FACTS {¶ 4} "The Plaintiff, E. G. Lewis, is a real estate developer and broker. The Defendant, Edward Smith, is the pastor of United Memorial Church of Christ, and has been a member of the clergy for 42 years. Defendant, Maria Smith is married to Defendant, Edward Smith. Rev. and Mrs. Smith met Lewis in the early 1990's, and had some business transactions with Lewis involving real estate matters. In the summer of 1994, the Smiths were interested in obtaining a used car for Mrs. Smith. Lewis offered to help them obtain a good deal from a rental car agency of which he maintained a continuing business relationship. It is not disputed that Lewis purchased a car from Avis, Ex. 2 on July 13, 1994, and the Smiths took possession of the car. It is not disputed that the Smiths gave Lewis a check for $10,700, Ex. 3, for the purchase of the car on July 17, 1994. It is also not disputed that when the Smiths took possession of the car the title was not transferred into the Smith's name. The title was issued 30 days later in the name of the Plaintiff, Lewis, Ex. 20. The Smiths testified that three weeks after they took possession of the car, Lewis returned their $10,700, Ex. 4. Lewis testified that he gave the money back because Rev. Smith told him they needed the money back and he asked Lewis if he was willing to finance the car for them. Both Rev. and Mrs. Smith deny that they ever asked Lewis for a loan. Mrs. Smith testified that Lewis told them he could not purchase the car in their name, so he bought the car in his own name and gave them back their money. Rev. Smith testified that when they discovered that Lewis had transferred title in his own name, they asked for their money back. It is not disputed that Lewis agreed to allow the Smiths to drive the car, and that they were to pay him $220.00 a month. The Smiths testified that they understood that they could use the car for the monthly fee as long as needed. Lewis testified that the Smiths signed a written agreement, Ex. 1, in which they agreed to repay Lewis for a loan in the amount of $10,700.00. The Smiths deny signing the written agreement, and deny that they ever agreed to any loan arrangement with Lewis. It is not in dispute that in order to pay for the vehicle, Lewis obtained a loan from NCR Credit Union and that the automobile was used as collateral for the loan, Ex. 21. Under the terms of the disputed written agreement between the Smiths and Lewis, it is stated that the loan itself was unrelated to the automobile, and the vehicle could not be returned to Smith for money or credit related to the personal loan, Ex. 1.
 {¶ 5} "A handwriting expert, Richard Shipp, testified on behalf of the Plaintiff, and gave his opinion that the signature on the questioned document, Ex. 1, was `probably' written by the Defendant, Edward Smith. Mr. Shipp stated that he could not reach an opinion beyond a reasonable doubt without an original copy of the questioned document. His opinion was based on a comparison of known documents containing the original signature of the Defendant and a copy of Exhibit 1. Based on the lack of an original and the disputed authenticity of Exhibit 1, it was not admitted into evidence, and was proffered for the record by Plaintiff. Mr. Shipp further testified that it is possible to scan a signature onto a document, but he found no evidence of tampering with Ex. 1, and that the signature on Ex. 1 was not an exact match with any of the other signatures he examined. Mr. Shipp did not testify as to the authenticity of the signature of Mrs. Smith on Ex. 1. Based on the inconclusiveness of the expert's testimony, the lack of any opinion on the signature of Mrs. Smith, the lack of an original document, the credibility of the Smiths' testimony in which they denied signing the document, and the lack of any witnesses to their signature, the Court did not allow Ex. 1 to be entered into evidence based on Evidence Rules 1002 and 1003.
 {¶ 6} "The Smiths drove the car for two years, and made all monthly payments of $220.00 per month directly to Lewis. Sometime in the winter of 1995, Lewis lived with the Smiths for approximately one month, while he was recuperating from surgery. During that time the Smiths converted their home office into a bedroom for Lewis and they assisted in his care. It was established that during this time period, Lewis had access to their personal records and their office equipment including a computer and fax machine. The Smiths have also been in the home office of Lewis, and observed that he has a computer, a scanner and a copier.
 {¶ 7} "In September of 1996, Rev. Smith and Lewis got into an argument, and Lewis thereafter refused to accept any further monthly payments. Lewis sent the Smiths a letter, Ex. 5, demanding a balloon payment of $8,183.02. Mr. Smith responded in writing, Ex. 6, stating that he was attempting to find financing and wanted the title and registration as soon as possible. Because the Smiths could not afford to pay Lewis the lump sum he demanded, they returned the car to Lewis on October 1, 1996, with a note, Ex. 7, stating that they had no alternative but to return the car because they were unable to obtain financing. The Smiths testified that the vehicle was in good working condition when they returned it to Lewis. Lewis claims that he immediately took the car for a mechanical inspection, and an estimate of the cost of repairs was made, Ex. 19. Bob Barlow from Gateway Auto Clinic testified that he inspected a 1994 Chevrolet Cavalier on October 1, 1996, for Lewis and prepared the estimate, Ex. 19. He believed that the vehicle had a worn crank bearing and needed repairs totaling $4,278.39. However, the work was not done. It was not disputed that Lewis thereafter transferred possession of the vehicle to Jackie Dudash, who drove the vehicle for some time with an agreement that she would pay Lewis $220.00 per month, plus insurance costs. She testified that she made all payments to Lewis, usually with a money order. Lewis denied that Dudash made regular payments, but admitted that Dudash rented the vehicle from him for about 1½ years, but that she only made approximately four payments to him, totaling $445.00, and Dudash paid the insurance directly. Lewis testified that the vehicle then sat at the auto repair facility for about one year, then he allowed a David Duncan to use it for three or four months, without receiving any compensation. Lewis also admitted that in 1999, he transferred possession of the vehicle to David Speed for his son's use for travel to and from college. Speed confirmed that Lewis is allowing him to use the vehicle for an indefinite period of time so long as Speed pays for insurance and all maintenance and repair costs. Although the record is clear that after the Smiths returned the car to Lewis, at least three individuals have used the car for their personal needs for a total of more than four years, no evidence was presented to verify that the needed repairs as alleged in Exhibit 19 were ever completed. The title of the vehicle remains in the name of the Plaintiff, Lewis.
{¶ 8} "II. LAW AND ANALYSIS
 {¶ 9} "To prevail on his breach of contract action, the Plaintiff must prove the existence of a contract, performance by the Plaintiff, a default of the contract terms by the Defendant, and damages as a direct result of the breach. Doner v. Snapp (1994), 98 Ohio App.3d 597, 600. In defense, the Defendants have alleged fraud, illegality, statute of frauds, lack of consideration, and unconscionability.
 {¶ 10} "In this case, the Plaintiff did not prove that the Defendants signed or agreed to the terms of the written agreement, Ex. 1. It is clear that the parties did enter into an oral agreement for the use of the vehicle at a cost of $220.00 per month. Whether this agreement is enforceable must first be addressed. It is clear from the evidence that the parties intended the agreement to last more than one year. Although the Smiths testified that the agreement was intended to last an indefinite period, so long as they needed the car, it can be inferred from the Plaintiff's testimony that he expected the payments to continue at least until his loan was paid off, Ex. 21, or for the length of the alleged loan between the parties, Ex. 1. Based on the statute of frauds, R.C. 1335.05, any agreement which is intended to be completed in more than one year must be in writing and signed by the person to be charged therewith, or it is unenforceable. ZBS Industries v. Anthony CocoaVideoland (1994), 93 Ohio App.3d 101. In this case the Plaintiff has failed to present admissible evidence of any written agreement between the parties, and therefore the oral agreement violates the statute of frauds and is unenforceable. (Doc. 19)."
 {¶ 11} Plaintiff Lewis filed three objections to the magistrate's decision, the first two of which are identical to his two assignments of error on appeal, to-wit:
 {¶ 12} "The trial court and magistrate erred in excluding the signed agreement offered as evidence by the appellant.
 {¶ 13} "The trial court erred in finding that the oral agreement alleged by the appellant violated the statute of frauds and was unenforceable."
 {¶ 14} While certainly somewhat repetitious to the magistrate's decisions on these two issues, it is instructive to set forth the following relevant portions of the trial court's entry dealing with these two objections which are raised on appeal:
 {¶ 15} "A. Plaintiff's First Objection: The Magistrate erred in notadmitting Plaintiff's Exhibit 1.
 {¶ 16} "Lewis claims that the Magistrate erred when by ruling Plaintiff's Exhibit 1 inadmissible pursuant to Evidence Rules 1002 and 1003.
 {¶ 17} "Evid.R. 1002 requires the original writing of a document be submitted to prove the content of that document. Evid.R. 1003 provides that a duplicate document is admissible `to the same extent as the original' except when there is a `genuine question . . . as to the authenticity of the original' or in circumstances where it would be `unfair to admit the duplicate in lieu of the original.'
 {¶ 18} "Plaintiff's Exhibit 1 is a photocopy of the loan document which Lewis claims was signed by the Defendants. As stated above, Defendants deny signing the document. Lewis offered the testimony of a handwriting expert, Richard Shipp (`Shipp') who opined that the signature on Exhibit 1 was `probably' written by Defendant Edward Smith. This opinion was based on Shipp's comparison of documents known to have been signed by Edward Smith and the signature on a copy of the loan document. Shipp stated that the [sic] could not offer an opinion regarding the handwriting beyond a reasonable doubt without an original copy of the loan document. Shipp additionally testified that it is possible to use a digital scanner to transfer the image of a signature on one document onto another document, but stated that he found no evidence that Exhibit 1 had been tampered with in such a manner. Shipp also stated that the signature that appeared on Exhibit 1 did not exactly match any of the signatures on the documents he used to make his comparison. Furthermore, Shipp gave no opinion regarding the alleged signature of Maria Smith, which also appeared on Exhibit 1.
 {¶ 19} "The Magistrate refused to admit Plaintiff's Exhibit 1 based on the inconclusiveness of Shipp's testimony regarding the Defendants' alleged signatures on Exhibit 1, the failure by Lewis to produce the original loan document, and the credibility of the Defendants' testimony, and the absence of any witnesses to the signature. After careful review of the record as well as the Magistrate's Decision, this Court finds sufficient evidence existed so as to establish a genuine question regarding the authenticity of the document and warrant its exclusion pursuant to Evid.R. 1003. Therefore, the Plaintiff's First Objection is OVERRULED.
 {¶ 20} "B. Plaintiff's Second Objection: The Magistrate erred infinding that the oral agreement between the parties violated thestatute of frauds and was unenforceable.
 {¶ 21} "While the Court finds that the Plaintiff has failed as a matter of law to establish that a written agreement existed between the parties, this Court finds that it is undisputed that the parties had an oral agreement by which Defendants would use the car in exchange for a monthly $220.00 payment to Lewis. The question turns to whether this oral agreement is enforceable in light of Ohio's statute of frauds, codified as R.C. 1335.01 et seq. R.C. 1335.05, the general statute of frauds, provides in relevant part that:
 {¶ 22} "No action shall be brought . . . upon an agreement that is not to be performed within one year from the making thereof, unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized.
 {¶ 23} "Thus under R.C. 1335.05, an oral contract that is not intended to be fulfilled within one year is unenforceable.
 {¶ 24} "The Defendants testified that the duration of the agreement was indefinite — that they were to make monthly payments to Lewis for as long as they needed the car. While potentially such an agreement could fall outside the boundaries of R.C. 1335.05 because the Defendants could have returned the car to Lewis within a year, these are not the terms of the oral agreement at issue before this Court. There is no dispute that for two years, the Defendants paid Lewis $220.00 each month for use of the car. Thus even if the Defendants' understanding of the agreement was enforceable under R.C. 1335.05, there is no evidence that such an agreement was breached by either party.
 {¶ 25} "Instead, this Court must examine the oral agreement that Lewis alleges existed between the [sic] himself and the Defendants. It is clear from Lewis' testimony that any such agreement was intended to last a minimum of two years. Lewis testified that by the terms of the agreement, the Defendants would make monthly payments of $220.00 for two years, after which time they would make a balloon payment. Thus assumingarguendo that this agreement did exist between the parties, under R.C.1335.05, said agreement is unenforceable absent written evidence of the agreement that bear the Defendants' signatures. As the Plaintiff failed to offer as admissible evidence any such writing, this Court finds that the Magistrate correctly held that the oral agreement between the parties violated the statute of frauds and was unenforceable. Therefore, the Plaintiff's Second Objection is OVERRULED."
 {¶ 26} There was a third objection by plaintiff Lewis alleging error by the magistrate in finding that the alleged lease agreement was also unenforceable because it violated R.C. 4505.03 (failure to deliver title) and R.C. 4517.02(A)(3) which found Lewis in the business of leasing motor vehicles without a license. This objection was found to be moot by the trial court and it has not been raised on appeal.
 {¶ 27} In his first assignment of error, appellant Lewis argues that the decision of the magistrate, as adopted by the trial court, refusing to admit his alleged copy of an alleged document, was an abuse of discretion by the court. As the appellant recognizes, an abuse of discretion connotes more than a mere error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconsciable.Huffman v. Hair Surgeon, Inc. (1985), 19 Ohio St.3d 83, 87. The Ohio Supreme Court has also stated that "in order to have an `abuse' in reaching [its decision], the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." Statev. Jenkins (1984), 15 Ohio St.3d 164, 222.
 {¶ 28} Based upon the facts and reasoning set forth by both the magistrate and the trial court, we cannot find an abuse of discretion in refusing to admit the alleged document presented by plaintiff Lewis.
 {¶ 29} In his second assignment of error, Lewis essentially raises the same abuse of discretion standard by characterizing the magistrate's decision regarding the statute of fraud as arbitrary and unreasonable. Again, we find that the magistrate and the trial court correctly applied the law and their decision as such was not unreasonable or arbitrary.
 {¶ 30} Both assignments of error are overruled and the judgment is affirmed.
BROGAN, J. and GRADY, J., concur.